384 So.2d 959 (1980)
Michael L. EVANS, Appellant,
v.
FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY, a Corporation, Appellee.
No. NN-326.
District Court of Appeal of Florida, First District.
June 23, 1980.
*960 James L. Tomlinson, of Scruggs, Carmichael, Long, Tomlinson, Roscow, Pridgeon, Helpling & Young, Gainesville, for appellant.
Milton H. Baxley, II, Gainesville, for appellee.
McCORD, Judge.
This appeal is from two final judgments, the first granting summary final judgment in favor of appellant/plaintiff Michael L. Evans on Count I of the Amended Complaint and the second granting summary final judgment in favor of appellee/defendant Florida Farm Bureau Casualty Insurance Company on Count II of the Second Amended Complaint. We reverse as to both judgments.
In January, 1975, appellant Evans entered into an insurance contract with appellee Farm Bureau covering his pickup truck. The policy included the following coverages: uninsured motorist endorsement of $25,000 for each person; medical payments $2,000 each person; and personal injury protection benefits (PIP). Subsequently, appellant Evans while operating the pickup was hit from the rear by one Margaret Glenn who was insured by Government Employees Insurance Company (GEICO). It is undisputed that the accident was Glenn's fault and that appellant Evans has suffered permanent injuries as a result of the accident. Glenn was insured by GEICO to the extent of $10,000/20,000 for bodily injury liability. Appellant's injuries undisputedly exceeded that amount and he filed suit against Glenn and GEICO.
Farm Bureau paid appellant $5,000 PIP benefits and $783 under the medical payments coverage of its policy. Glenn and GEICO offered to settle with appellant for the $10,000 policy limits of Glenn's insurance with GEICO. In December, 1976, appellant informed appellee Farm Bureau of Glenn and GEICO's offer and informed Farm Bureau that he would make claim against Farm Bureau under the uninsured/underinsured motorist coverage of its policy. Prior to January 4, 1977, appellant received notice from appellee that in settling *961 with GEICO and Glenn, he must protect appellee's subrogation rights against Glenn. Unable to meet that restriction, on February 11, 1977, appellant requested appellee to authorize him to settle his civil action against GEICO and Glenn for the $10,000 policy limits offered or permit him to proceed to judgment against Glenn and GEICO. Appellant's policy provided that he obtain the written consent of Farm Bureau to make any settlement with or to prosecute to judgment any action against a tortfeasor. Appellee did not respond to appellant's request and there is evidence in the record that claims adjusters of appellee indicated to appellant that his claim would not be settled by appellee for years. Appellant contends that appellee's actions were designed to force him to settle with GEICO and Glenn without appellee's consent and thereby forfeit his right to recover under the uninsured motorist provisions of his policy with appellee.
On March 1, 1977, appellant filed the suit here on appeal against appellee. Amended Count I sought underinsured motorist benefits under his policy with appellee and sought damages for appellee's alleged unreasonable withholding of its written consent to settlement or consent to his proceeding to judgment against Glenn and GEICO. In Count II of the second amended complaint, appellant alleged that Farm Bureau did not exercise reasonable diligence or ordinary care toward appellant in that it maliciously attempted to manipulate appellant to perfect a settlement with Glenn and GEICO without its consent so that appellant would forfeit his right to recover under his uninsured motorist coverage with appellee. Appellant sought damages under Count II for tortious breach of contract and punitive damages.
Appellant correctly contends that his amended Count I incorporated two claims in the one count, one for the uninsured motorist benefits and the other for damages for breach of its insurance contract by withholding its consent to appellant to settle with Glenn and GEICO or by withholding its consent to appellant to continue the suit against Glenn and GEICO to final judgment thereby causing him to lose GEICO's $10,000 coverage of Glenn. The second claim of amended Count I was not addressed and apparently was not considered by the trial court in its summary final judgment as to Count I. Appellee Farm Bureau contends that the second claim of Count I should not be considered because Florida Rule of Civil Procedure 1.110(f) requires a plaintiff to state separate causes of action in separate counts. Appellee, however, having failed to object at the pleading stage when the rule violation could be corrected, cannot now be heard to contend that appellant's two claims under the first count cannot be considered. Cf. Plowden & Roberts, Inc. v. Conway, 192 So.2d 528 (Fla. 4 DCA 1966), and Arcade Steam Laundry v. Bass, 159 So.2d 915 (Fla. 2 DCA 1964).
We find that appellant's second claim contained in amended Count I states a cause of action for breach of contract. Considering the evidence which was before the trial court at the time of summary judgment in the light most favorable to appellant, we find there was evidence which would lend some support to appellant's contention that appellee withheld its written consent to him to either settle the claim with GEICO and Glenn or proceed to judgment against them for the purpose of maneuvering appellant into a position to either forfeit his underinsured claim against appellee or his claim against Glenn and GEICO. There are material factual issues as to this second claim contained in amended Count I and it was therefore error to grant summary judgment as to Count I.
Count II is in large part a duplication of the second claim of Count I but it seeks damages for tortious breach of contract and punitive damages. Appellee contends that the evidence on motion for summary judgment does not support the claim and also that the action is precluded by this Court's opinion in Baxter v. Royal Indemnity Company, 285 So.2d 652 (Fla. 1st DCA 1973); cert. discharged 317 So.2d 725 (Fla. 1975). We find as to this count, as we did with the second claim of Count I that there *962 is some support in the evidence for appellant's allegations; that there are material issues of fact which preclude summary judgment. There was a duty upon the insurer to act reasonably with its insured. The record at this point does not indicate that appellee made an effort to determine whether or not Glenn was judgment proof  whether a judgment against her in excess of her $10,000 insurance coverage could be satisfied. Also, if appellee had been concerned that appellant in continuing to judgment against Glenn and GEICO would not adequately represent its interest, it would appear that it could have joined appellant in that suit to protect its interest. In addition, we have the circumstance that appellee did not give its written consent to settlement in that it agreed to settlement only if Glenn were not released and appellee did not agree in writing to appellant's continuation of its suit against Glenn and GEICO to judgment (although it does appear that appellant did not wait very long after the formal inquiry before filing suit). The circumstances relating to all of this present a fact question as to whether or not the actions of appellee were reasonable as to the second claim of Count I or under Count II were a malicious attempt to manipulate appellant to perfect a settlement with Glenn and GEICO so that appellant would forfeit his right to recover under his uninsured motorist coverage with appellee.
Baxter v. Royal Indemnity, supra, is distinguishable from this case. There the insureds claimed punitive damages for their insurers alleged malicious and willful refusal to settle an uninsured motorist claim. A provision in that policy provided for arbitration if the parties failed to agree to settle an uninsured motorist claim. In holding that the insurer had no duty to settle that claim, this Court said:
Because the interests of the insurer are wholly adverse to those of its insured as to every facet of a claim under the uninsured motorist provision of the policy, no basis for a fiduciary relationship between the parties exists.
* * * * * *
The legal relationship existing between the insured and his insurer on claims for collision damages or damages caused by uninsured motorists is that of debtor and creditor in which no fiduciary relationship is present. Baxter v. Royal Indemnity Company, supra, at 656, 657.
The case sub judice is not predicated upon a refusal of Farm Bureau to settle appellant's uninsured motorist claim against it. The rationale for the decision in Baxter is not applicable to appellee's alleged refusal here to consent to settlement of appellant's claim against the tortfeasor and the tortfeasor's insurer or to consent to appellant's continuation of that action to final judgment. Here, appellee had a duty to appellant to act reasonably with its policy holder. It would have had no such duty in relation to settlement with its insurer of a claim for uninsured motorist benefits. In a similar situation, in Levy v. American Automobile Insurance Company, 31 Ill. App.2d 157, 175 N.E.2d 607 (1961), the court said:
"In the case at bar, the condition of the company's promise to pay is the ascertainment of the legal liability of the third party. The company can prevent this determination by the simple device of refusing to grant the insured its written consent to prosecute the action to judgment. There was an implied promise on the part of the Insurance Company that it would not reasonably or arbitrarily withhold its written consent. The company gave no reason for its refusal to allow the plaintiffs to obtain a judgment against the uninsured motorist. It appeared that the company wanted the matter arbitrated and that if the insured refused to submit to arbitration, it would prevent a determination of its liability on the policy. Under these circumstances, the action of the company in arbitrarily withholding its written consent constitutes a violation of the implied provisions of the policy ..."
In addition, the court of appeals of Missouri in Kisling v. MFA Mutual Insurance Company, 399 S.W.2d 245, 251 (Mo. App. 1966), found a similar consent clause regarding *963 requests to settle valid but pronounced the following caveat:
We hasten to add the caveat that the foregoing should not be misinterpreted as an expression of opinion that the settlement prohibition accords to an insurer the untrammeled, uninhibited and unlimited right to reject or ignore an insured's request for written consent to a proposed settlement with a `person or organization who may be legally liable' for bodily injury to the insured. On the contrary, we think that the propriety of the insurer's action in response to any such request should be, when appropriately and properly put in issue, subject to judicial scrutiny and measurement under the rule of reason, i.e., subject to determination as to whether the insurer's conduct with respect to any such request is, under all of the facts and circumstances of that particular situation, arbitrary or unreasonable.
Appellant also contends that the trial court erred in entering summary final judgment in his favor on the first claim of Count I (the underinsured motorist claim) in that it awarded appellee a set-off of $5,000 from appellant's underinsured motorist benefits for personal injury protection benefits appellee had paid to or in appellant's behalf. We disagree. This question was decided by our opinion on a previous petition for writ of certiorari filed by appellant from the trial court's order allowing such set-off. Evans v. Florida Farm Bureau Casualty Insurance Company, 355 So.2d 149 (Fla. 1st DCA 1978). We adhere to that ruling.
The points raised by appellee on its cross-appeal against appellant relate to whether or not the trial court erred in its assessment of costs and attorney's fees against appellee. In view of our reversal here of the summary final judgments, we must also reverse the points raised in the cross-appeal without considering them on their merits. A new cost judgment will be necessary following a new final judgment in the case.
REVERSED and REMANDED.
LARRY G. SMITH and SHIVERS, JJ., concur.