864 P.2d 618

Merrie Jo BANTZ and Kirk Bantz, Individually and as Husband and Wife, Plaintiffs–Respondents,

v.

Neal T. BONGARD, E.L. Murphy Trucking Co., and Carrier's Insurance Company of Iowa, all by and through the Minnesota Insurance Guaranty Association, a quasi-governmental entity, created by the laws of the state of Minnesota, Defendants,

and

Mutual of Enumclaw Insurance Company, a Washington corporation authorized to do business in the state of Idaho, on Behalf of C. Benjamin HAMILTON, Defendant–Appellant,

North Pacific Insurance Company, an Oregon corporation authorized to do business in the state of Idaho, Defendant.

Merrie Jo BANTZ and Kirk Bantz, Individually and as Husband and Wife, Plaintiffs–Respondents,

v.

Neal T. BONGARD, E.L. Murphy Trucking Co., and Carrier's Insurance Company of Iowa, all by and through the Minnesota Insurance Guaranty Association, a quasi-governmental entity, created by the laws of the state of Minnesota, Defendants–Appellants,

and

Mutual of Enumclaw Insurance Company, a Washington Corporation authorized to do business in the state of Idaho, on behalf of C. Benjamin Hamilton; North Pacific Insurance Company, an Oregon corporation authorized to do business in the state of Idaho, Defendants.

Nos. 19665, 19695.

Supreme Court of Idaho,
Boise, January 1993 Term.

Nov. 29, 1993.

Cantrill, Skinner, Sullivan & King, Boise, for appellant Mut. of Enumclaw. Robert D. Lewis, argued.

Smith & Beeks, Twin Falls, for appellant MN Ins. Guar. Ass'n. Paul M. Beeks, argued.

Skinner, Fawcett & Mauk, Boise, for respondents Merrie Jo Bantz and Kirk Bantz. W. Craig James, argued.

BISTLINE, Justice.

This is an insurance coverage case which involves the questions of: 1) whether Merrie Jo Bantz (Bantz), who is a third-party beneficiary of an uninsured motorist insurance policy, has waived that insurance coverage by settling with some parties before trial without the permission of the insurance company or by failing to give timely notice of her claim to the insurance company, and 2) whether the Minnesota Insurance Guaranty Association (MIGA) may refuse to pay the damages assessed against an individual insured by an insolvent Minnesota insurance company until the plaintiffs have followed certain administrative claim procedures set forth by Minnesota law.

## STATEMENT OF THE CASE AND PROCEEDINGS

### The Accident

A multiple vehicle accident occurred on November 30, 1983. Merri Jo Bantz suffered injuries to her back when she was thrown about the inside of the parked Lincoln Continental she occupied as a passenger. The vehicle owner, Benjamin Hamilton, was also thrown about the vehicle while seated in the driver's seat, but he was not injured. The vehicle was manufactured by Ford Motor Company. Before the accident, Hamilton had been driving up a snow and ice covered hill. He experienced traction difficulties, so he pulled off the right side of the road and parked.

A tractor-trailer rig was also parked on the right shoulder of the road, some distance ahead of the Hamilton/Bantz vehicle. It was owned by Davis Transport and operated by Shawn Ellis. Ellis was putting out

reflectors near his parked tractor-trailer rig when he observed an Oldsmobile coming from the other direction. The Oldsmobile was owned by Richard Featherston and operated by Dan Featherston. The vehicle was manufactured by General Motors Corporation.

Ellis considered the Featherston vehicle to be traveling at a high rate of speed. As it passed him, he waved or "flagged" Featherston. Featherston apparently applied his brakes and lost control of the vehicle. The vehicle then crossed the center line and collided head-on with a tractor-trailer rig that was passing the Hamilton/Bantz vehicle. The impact knocked the trailer into the side of the Hamilton/Bantz vehicle, allegedly causing Bantz's injuries. This tractor-trailer was owned by E.L. Murphy Trucking Company and operated by Neil T. Bongard.

### The Complaint for Damages

Bantz and her husband, Kirk Bantz, filed a complaint for damages naming as defendants Hamilton, Murphy Trucking and Bongard, Davis Transport and Ellis, Featherston, Ford Motors, and General Motors. The Bantzes settled their claims against Davis Transport and Ellis, General Motors, and Featherston before trial. They voluntarily dismissed Ford from the suit. The defendants who settled received *Pierringer* releases.[1] Hamilton's insurance company, Mutual of Enumclaw, did not give written permission to the Bantzes authorizing these settlements.

The Bantzes went to trial against Hamilton and Bongard/Murphy Trucking. The jury, by special verdict, apportioned liability as follows:

| 1. | Merrie Jo Bantz | 3% |
| 2. | Hamilton | 3% |
| 3. | Bongard | 17% |
| 4. | Featherston | 65% |
| 5. | Ellis | 12% |

The amount of damages awarded by the jury was $131,175.00 to Merrie Jo Bantz and $5,000 to her husband, Kirk. Howev-

---

1. *See Pierringer v. Hoger,* 124 N.W.2d 106 (1963). A *Pierringer* release is an agreement whereby a plaintiff releases one (or more) co-

defendant[s] but reserves the right to proceed against the remaining defendants.

er, the trial court ordered a conditional additur which increased the award to $238,-500. The parties have stipulated that the Bantzes' right to recovery on the $238,500 judgment against each party is as follows:

1. Hamilton         –0–
2. Bongard          $39,328
3. Featherston      $150,374 (settled for $17,500)
4. Ellis            $27,761 (settled for $5,000)

Bongard has refused to accept the terms of the conditional additur and a new trial on the issue of damages has been ordered. The new trial has been stayed pending resolution of the declaratory judgment action discussed below.

### The Action for Declaratory Judgment

The insurance coverage of the defendants who went to trial is as follows:

1) Hamilton was insured by Mutual of Enumclaw. His policy included uninsured motorist coverage.

2) E.L. Murphy Trucking and Bongard were insured by Carrier's Insurance Company. This policy had a self-insured retention of $25,000. Carrier became insolvent in 1986, and the Minnesota Insurance Guaranty Association (MIGA) undertook Carrier's defense obligations. Additionally, Bantz had uninsured motorist insurance from North Pacific. After the trial, MIGA refused to pay the judgment.

The Bantzes then filed a declaratory judgment action seeking a determination that they are entitled to payment of uninsured/underinsured motorist coverage under insurance policies issued by North Pacific and Mutual of Enumclaw, and that they are entitled to payment by MIGA of the judgment entered against Bongard.

All four parties filed motions for summary judgment. The Bantzes argued that they were entitled to collect from both insurance companies and MIGA under the terms of the respective policies. Mutual of Enumclaw and North Pacific argued the Bantzes lost their right to coverage in settling several claims without the permission of the respective carriers. Mutual also argued that it was not timely notified of the claim. MIGA argued that it was not required under Minnesota law to pay anything until all uninsured motorist coverage had been exhausted and because certain administrative procedures mandated by Minnesota law had not yet been followed.

The district court ruled as follows:

1) It granted North Pacific's motion holding that the Bantzes had waived policy coverage by entering into settlement agreements without North Pacific's permission. The court noted that although no Idaho appellate decision has ever addressed the issue of whether "consent-to-settle" clauses in insurance policies are enforceable or void for public policy, the majority of state courts have held them to be enforceable. The court adopted the majority view. This order has not been appealed.

2) Mutual of Enumclaw's motion was denied, the district court holding that its consent-to-settle clause was not enforceable against Bantz because: a) of the conflict of interest between Mutual who defended Hamilton against the Bantzes' complaint and the Bantzes, and b) the Bantzes were not signatories to Hamilton's policy and no reported case has extended the reach of a consent-to-settle provision to cover a third-party beneficiary.

3) MIGA's motion was also denied, the district court holding that the Bantzes were not barred from recovering from MIGA even though they had waived their North Pacific policy coverage.

4) It granted the Bantzes' motion as to MIGA and Mutual of Enumclaw for the reasons above.

5) It denied the Bantzes' motion as to North Pacific for the reasons above.

Mutual of Enumclaw and MIGA both appealed from the court's order and those appeals have been consolidated by order of the Court.

### DISCUSSION

Mutual of Enumclaw raises the following issues on appeal:

1. Was Bantz required to comply with the consent-to-settle provisions of Hamilton's policy in order to obtain uninsured motorist benefits?

2. Did Bantz lose her right to uninsured motorist coverage because she failed to promptly notify Mutual of her claim?

MIGA raises these issues:

1. Do the Idaho courts have jurisdiction to order MIGA to pay the judgment against Bongard?

2. Does the Bantzes' loss of their North Pacific Insurance Company uninsured motorist benefits constitute an "exhaustion" of benefits so as to trigger MIGA coverage?

3. Is MIGA entitled to offset the available uninsured motorist coverage and the Carrier insurance policy $25,000 self-insured retention before it is required to pay the Bantzes?

We hold that the consent-to-settle clause in the insurance policy in this case is valid and can be asserted against Bantz if Mutual can show upon remand that it was materially prejudiced by the unauthorized settlement agreements entered into by Bantz. We also hold that Bantz substantially complied with the prompt notification clause in the Mutual policy. As to MIGA's appeal, although the plaintiffs have established liability against Bongard (the insured of the insurance company which MIGA now stands in the shoes of) the amount of damages will be established in the new trial now set for that purpose, we hold that the Bantzes must avail themselves of Minnesota administrative procedures in order to collect on their monetary claim against MIGA.

The rationale for our holdings is set forth below.

### Mutual of Enumclaw's Claims

**1. The consent-to-settle provision is valid and will bar any recovery under the uninsured motorist policy if Mutual can show, upon remand, that it was prejudiced by the unauthorized settlements.**

An insurance policy is a contract and the parties' rights and obligations are primarily set forth within the four corners of the policy. *Kootenai County v. Western Casualty & Sur. Co.*, 113 Idaho 908, 910, 750 P.2d 87, 89 (1988). The Mutual policy states that it would "not provide Uninsured Motorist Coverage for **bodily injury** sustained by any person ... [i]f that person ... settles any part of this claim without **our** written consent." (Emphasis in original.) Bantz did not ask for or receive written consent to settle her claims and therefore, as Mutual would have it, she cannot collect under the Mutual policy.

This Court has never ruled on the validity of consent-to-settle clauses. The results of the out-of-state cases considering the issue are mixed. It appears that the majority of out of state courts have held the clauses are enforceable.[2] The rationale of those cases is that the insurer may structure the insurance policy in such a way as to protect its right to subrogation. Therefore any settlement which forecloses the insurer from seeking reimbursement from the settling party appropriately terminates the insurance company's obligation under the policy. In this case, there is no dispute that Mutual would have a subrogation right against those defendants who settled with Bantz.[3] Thus, according to the majority of jurisdictions, the consent-to-settle clause in this case is enforceable.[4]

---

**2.** *See, e.g., Virginia Farm Bureau Mut. Ins. Co. v. Gibson*, 236 Va. 433, 374 S.E.2d 58, 63 (1988); *Aetna Casualty & Sur. Co. v. Poirier*, 371 Mass. 257, 356 N.E.2d 452, 455 (1976); Annotation, *Validity, Construction, and Effect of "No-Consent-to-Settlement Exclusion Clauses in Automobile Insurance Policy,"* 18 A.L.R. 4th, 249–97 (1982).

**3.** The accident in this case occurred prior to the legislative abolition of joint and several liability. *See* I.C. § 6–803(3) (establishing individual rule of liability).

**4.** Those courts which have held that consent-to-settle clauses are invalid do so because they perceive the clause to be in conflict with their state's uninsured motorist insurance statutes. The courts reason that consent-to-settle clauses are void for public policy because they infringe on the uninsured motorist coverage which is mandated by their respective state statutes. *See, e.g., Hebert v. Green*, 311 So.2d 223, 229 (La.1975); *Wescott v. Allstate Ins.*, 397 A.2d 156, 169 (Me.1979). By contrast, the Idaho uninsured motorist statute, I.C. § 41–2502, only requires insurance companies to offer such cover-

However, the district court held, and Bantz argues on appeal that the consent-to-settle provision is not enforceable due to the conflict of interest between Mutual and Bantz caused by Mutual's defense of Hamilton against Bantz's lawsuit.

Mutual responds that the potential for a conflict of interest is inherent in uninsured motorist coverage and therefore it is not unusual for insurance companies to face this situation. For example, the same problem exists when the plaintiff and defendant have the same insurance company. Mutual argues that such conflicts do not provide a basis to preclude enforcement of the consent-to-settle provision. *See Nationwide Mutual Ins. Co. v. Webb*, 291 Md. 721, 436 A.2d 465, 467–68 (App.1981).

■ We hold that the potential conflict of interest between Bantz and Mutual does not mandate that this Court hold the consent-to-settle provision void as against public policy. Some conflict will inherently exist in uninsured motorist claims and this is not a case where Mutual unreasonably withheld approval of a settlement offer. Bantz simply never sought approval from Mutual of the settlements she entered into. The potential conflict of interest in this case never ripened into a problem and, thus, cannot form the basis upon which to ignore the plain language of the policy.[5]

As an alternative basis for its decision, the district court held the consent-to-settle clause invalid because Bantz was not a signatory to the policy and should not be strictly held to its terms. We are not persuaded to so hold. Although the parties have not drawn our attention to, nor has our research discovered any cases where an insurance company has sought to enforce a consent-to-settle clause against a third party beneficiary, other courts have held that an additional insured must comply with the obligations of a policy in order to benefit therefrom. *See McClelland v. United Services Auto. Ass'n*, 525 S.W.2d 271, 272 (Tex.App.1975) (enforcing consent-to-settle provision against minor child when mother, the named insured, settled claims without insurer's consent); *Johnson v. Atlanta Casualty Co.*, 187 Ga.App. 306, 370 S.E.2d 157, 158 (1988), *cert. den.*, June 9, 1988 (enforcing prompt notification provision); *Jeanes v. Arrow Ins. Co.*, 16 Ariz. App. 589, 592, 494 P.2d 1334, 1337 (1972) (mandatory arbitration clause enforced).

■ After considering the above authority, we conclude that a third party beneficiary of an insurance policy must comply with all the terms and provisions of an insurance policy which apply to that beneficiary. It would be manifestly unfair to allow a third party beneficiary to collect the benefits of the insurance policy without fulfilling the obligations therein. The consent-to-settle clause in the Mutual policy states that no uninsured motorist coverage will be provided to any "person" if that "person" settles a claim without Mutual's consent. This clause applies to all potential beneficiaries, not just the named insured, and Bantz was obliged to comply with it.[6]

However, the lone fact that the insured has violated the consent-to-settle provision does not necessarily mean the insurance coverage has been forfeited. Several courts require an insurance company to prove that the unapproved settlement prej-

age. *Miller v. Farmers Ins. Co.*, 108 Idaho 896, 898, 702 P.2d 1356, 1358 (1985).

**5.** At the same time, we share the concern of the district court about the conflict of interest. However, we note that the Court has already held that parties to an insurance policy have a duty to act in good faith. *Openshaw v. Allstate Ins. Co.*, 94 Idaho 192, 194, 484 P.2d 1032, 1034 (1971). Along that same line, some state courts have held that a consent-to-settle clause may not be enforced if the insurance company fails to agree to a reasonable settlement offer. *See, e.g., Prudential Property & Casualty Ins. Co. v. Nayerahamadi*, 593 F.Supp. 216, 194 (D.C.Pa.1984);

*Evans v. Florida Farm Bureau Cas. Ins. Co.*, 384 So.2d 959, 962 (Fla.App.1980), *appeal after remand* 419 So.2d 709 (Fla.App.1982); *Stanko v. Hartford Accident & Indemnity Co.*, 121 R.I. 331, 397 A.2d 1325, 1326 (1979). But in this case, we are not faced with that situation.

**6.** We note that Bantz does not claim that she was taken unawares by this provision. To the contrary, it appears that she had at least constructive notice of provision in that she had in her possession a copy of the insurance policy before she entered into any settlement agreements.

udiced it before the consent-to-settle clause will be enforced.

Before settlement with an uninsured motorist can be regarded as a breach of the no-consent-to-settlement exclusion clause sufficient to relieve the insurer of its liability under the uninsured motorist endorsement, such breach must be shown to be prejudicial to the insurer.

. . . .

If the insured's settlement with the uninsured motorist was clearly fair and reasonable, representing substantially the total amount which could reasonably have been recovered from the uninsured motorist after full pursuit of the insured's claim, that settlement would not exclude uninsured motorist coverage by operation of the no-consent-to-settlement clause, notwithstanding that such settlement was obtained without the carrier's consent.

*Thompson v. American States Ins. Co.,* 687 F.Supp. 559, 564 (M.D.Ala.1988). The Florida Court of Appeals refused to enforce a consent-to-settle clause in a case where the insured settled with "an impoverished maid" who was "completely judgment proof." The court noted that when the insurance company "lost the opportunity to secure the judgment, it lost nothing" and an "illusory 'loss' of this kind cannot result in forfeiture of insurance coverage." *Southeastern Fidelity Ins. Co. v. Earnest,* 395 So.2d 230, 231 (Fla.App.1981); *see also Silvers v. Horace Mann Ins. Co.,* 324 N.C. 289, 378 S.E.2d 21, 26–27 (1989); *Kapadia v. Preferred Risk Mut. Ins. Co.,* 418 N.W.2d 848, 852 (Iowa 1988).

■ In line with the above authority, we have determined that a consent-to-settle clause should not be enforced so as to work a forfeiture of uninsured motorist coverage unless the insurer can show actual prejudice from the unconsented-to settlement. To hold otherwise would produce an unde-served windfall to the insurance company while depriving an otherwise deserving insured person of recovery. Accordingly, we remand the cause to the district court with directions to allow Mutual an opportunity to demonstrate that prejudice resulted from the settlements.

**2. Bantz substantially complied with the prompt notification requirement in the Mutual policy.**

■ The Mutual policy requires an insured to promptly notify the insurer of any claim for uninsured motorist coverage. Section IV of the policy provides:

**You** must promptly notify **us** or **our** agent of any **accident** or **loss**. **You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and address of any injured persons and witnesses.

(Emphasis in original.)

Bantz did not give notice of the claim until August 1989. By that time, Bantz had already settled with General Motors, Featherston, and Ellis.

The trial court held that Mutual had constructive notice of the claim because Hamilton notified them of the accident and Mutual fully defended him at trial. We agree. This Court has long held that only substantial compliance with a contractual notice provision is required. *Berg v. Ass'n Employers, Reciprocal & Illinois Indem. Exch.,* 47 Idaho 386, 392, 279 P. 627, 628 (1929).

Here Hamilton filed an automobile loss notice which notified Mutual that Bantz was a passenger in the car at the time of the accident, and that she was going to file medical claims. It further states: "[p]lease refer all inquires to Mary [sic] Jo Bantz's attorney per attached letter." This notice gave adequaté notice to Mutual of Bantz's claim and she did not need to file another notice in order to so advise Mutual. The district court did not err in concluding that Hamilton's notice also gave Mutual constructive notice of Bantz's claim.

*MIGA's Claims*

**1. Idaho Courts do not have jurisdiction to determine the extent of MIGA's coverage of its insured.**

■ MIGA argues, for the first time on appeal, that the Idaho courts are without jurisdiction to order it to pay the judgment against Bongard. In support of its argument, MIGA cites to Minnesota Statutes § 60C.10 which provides that "the board shall determine whether claims submitted for payment are covered claims." Other provisions in the Minnesota Code provide for an appeal if the board rejects a claim. The Minnesota Supreme Court has held that unless the statutory procedure for submitting claims is followed, MIGA is not liable to pay the claim. *Taft v. Advance United Expressways*, 464 N.W.2d 725 (Minn.1991). In this case, Bantz has not submitted her claims to the board.

■ We first note that the jurisdictional issue is properly before the Court. A challenge to the jurisdiction of a court will be considered for the first time on appeal. *Nycum v. Triangle Diary Co.*, 109 Idaho 858, 862 n. 6, 712 P.2d 559, 563 n. 6 (1985); *Aram v. Edwards*, 9 Idaho 333, 337, 74 P. 961, 962 (1903). We further note that MIGA does not contend that the trial court was without jurisdiction to determine whether its insured, Neil Bongard, was liable to the Bantzes. The only question before us is whether, notwithstanding Bongard's liability, MIGA is excused, under the Minnesota laws which created it, from covering the amount of damages for which the Idaho courts have determined that Bongard is liable. In light of the Minnesota statutory scheme and the case noted above, we conclude that MIGA is not yet required to pay Bantz's claim. We hold that the question of whether the MIGA fund covers a particular claim, as opposed to whether MIGA's insured is liable, or the amount of damages arising from that liability, must be determined under Minnesota administrative procedure.

**2. The question of whether the Bantzes have exhausted their other insurance coverage must also be determined pursuant to the Minnesota administrative proceedings scheme.**

Minnesota Statute § 60C.13 requires claimants to exhaust any rights under other insurance policies before MIGA is required to pay. MIGA claims that it is not responsible for any coverage because the Bantzes have failed to exhaust their own North Pacific coverage by settling claims without North Pacific's consent. Similarly, MIGA argues that the Mutual coverage has not been exhausted if it is determined upon remand that the Bantzes waived the Mutual uninsured motorist coverage by virtue of their unapproved settlements.

We need not reach this issue because of our determination that the Bantzes must avail themselves of the Minnesota administrative procedures to collect their claim against Bongard. The questions regarding the extent of MIGA's coverage will be dealt with during those procedures. Minnesota Statute § 60C.10.

**CONCLUSION**

The order granting summary judgment in favor of the Bantzes against Mutual of Enumclaw is reversed. That cause is remanded for further proceedings. The order granting summary judgment in favor of the Bantzes against MIGA is also reversed. We dismiss the declaratory judgment action against MIGA for lack of jurisdiction. This cause is remanded for a new trial on the issue of damages as per the order of the district court.

No attorney fees on appeal. Costs on appeal to MIGA and Mutual of Enumclaw.

TROUT, J., and REINHARDT, J. Pro Tem., concur.

McDEVITT, C.J., concurs in the result.

JOHNSON, Justice, concurring, concurring in the result, and dissenting.

I concur with the portion of the Court's opinion concerning MIGA's claims.

I concur in the result of the portion of the Court's opinion concerning the consent-to-settle provision of Mutual's policy. In reaching the result on this issue, I would not rely on what the majority of out-of-state courts have done, but rather on the rationale stated by our Court. In my view, while the decisions of other courts on is-

sues presented to this Court may suggest a rationale for our decision, we should never embrace a rule merely because other states have done so.

I dissent from the portion of the Court's opinion concerning the adequacy of the notice of claim. In my view, the notice was not adequate.