*Creller v. MMG Ins. Co.*, No. 53-10-16 Gicv (Harris, J., Aug. 28, 2017).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| Grand Isle Unit | Docket No. 53-10-16 Gicv |

---

Kevin Creller vs. MMG Insurance Company

---

## ENTRY REGARDING MOTION

Count 1, Negligence - Other (53-10-16 Gicv)

Title:          Motion for Summary Judgment (Motion 2)
Filer:          MMG Insurance Company
Attorney:    John J. Boylan
Filed Date:  June 26, 2017

Response filed on 07/18/2017 by Attorney David G. Miller for Plaintiff Kevin Creller
Response filed on 08/02/2017 by Attorney John J. Boylan for Defendant MMG Insurance Company

This civil matter involves Plaintiff's claim for alleged insurance policy benefits due under the underinsured motorist ("UIM") provisions of his automobile liability policy. The insurer has moved for dismissal of the claim on the grounds Plaintiff failed to timely inform the insurer of his pending settlement with, and release of, the tortfeasor, impacting the insurer's subrogation rights.

The essential facts are set forth in the pleadings and the parties' motion materials, or more precisely are presumed to be as stated for purposes of Defendant's summary judgment motion when viewed in the light most favorable to Plaintiff.

Plaintiff Kevin Crueller ("Mr. Crueller" or "Plaintiff") is a Grand Isle resident who had an auto liability policy issued by Defendant MMG Insurance Company ("MMG" or "Defendant"). The policy included $500,000 in UIM coverage.

Mr. Crueller received serious injuries in a motor vehicle collision on 10/24/09. The negligent driver, Joel Grimes ("Mr. Grimes") was insured under a GEICO auto liability policy with a $100,000 liability coverage limit.

Mr. Crueller's injuries exceed $100,000 and thus would normally trigger up to $400,000 in UIM coverage under his MGM policy. Mr. Crueller, almost literally on the eve of the expiration of the tort action's statute of limitations ("SOL"), settled with GEICO and Mr. Grimes for payment of the $100,000 GIECO policy limit sum. Plaintiff received such policy limits payment in exchange for a mutual release and a hold harmless agreement, running in favor of

GEICO and Mr. Grimes. MGM was not notified of the claim, or the proposed settlement, before it was completed on 10/23/12. The Crueler- GEICO/Grimes settlement was the result of Mr. Crueller's pro se 8/28/12 GEICO settlement demand, facilitated at the very end of the process by his counsel in this case.

This suit was filed in 2016, after the three-year SOL on the underlying tort action had run. Pre-suit demand on MGM (and first notice of the incident and Mr. Crueller's claims), on Plaintiff's UIM claim, was made 11/26/12.

The MGM policy has certain UIM coverage provisions:

1. The insured (Mr. Crueller) , before settling with any tortfeasor owner of a vehicle that may be the subject of a MGM UIM claim, must "promptly notify" MGM in writing of any "tentative settlement" between the MGM insured and the third party, and also allow MGM 30 days to review the proposed settlement to decide if MGM will advance an equal payment to the proposed settlement, "to preserve [MGM's] rights against the insurer, owner or operator of such vehicle".

2. A contractual subrogation portion of the MGM policy states that if Mr. Crueller has rights to recover damages from another party, those rights are transferred to MGM and the "person" (here, Mr. Crueller) "must do everything necessary to secure our rights and must do nothing after the 'accident' or 'loss' to impair them".

3. The UIM coverage exclusions exclude any UIM claims if the MGM insured settles without MGM's consent "if the settlement prejudices our right to recover payments".

In addition to these insurance contract rights, a Vermont insurance statute provides an insurer which pays a covered loss a subrogation right to pursue liable third parties for such loss paid and states "the insured shall execute all papers required and shall cooperate with the company to secure the company such rights". 8 V.S.A. section 4203(4).

MGM argues the breach of these policy provisions and the statute allow it to exclude coverage of Plaintiff's UIM claim. MGM notes that the execution of the release and hold harmless document, without consulting with, and without the consent of MGM, destroyed its rights to seek subrogation of Mr. Grimes and/or his insurer for any sums MGM would have to otherwise pay in UIM benefits to Mr. Crueller.

Mr. Crueller contends, because GEICO sought additional medical records to support the GIECO policy limits claim of Mr. Cruller issued in 8/28/12, and the supporting medical record support was not supplied to GEICO until 21 or less days before the SOL ran – there was no duty or opportunity to provide MGM the contractual 30 days review period for Mr. Cruller's "tentative settlement". Plaintiff claims that time was too short to bind Mr. Cruller to the policy contract's tentative settlement review process without prejudicing Mr. Crueller.

Legal Analysis

Under Rule 56 a party is entitled to summary judgment in its favor if the movant shows that, there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.   In determining whether genuine issues of fact exist, the non moving party is to receive the benefits of all reasonable doubts and inferences.   *Samplid Enterprioses, Inc. v. First Vermont Bank*, 165 Vt. 22 (1996); *Messier v. Metro. Life Ins.  Co*., 154 Vt. 406 (1990).    Motions for summary judgment are and may be used to determine whether genuine issues of material fact exist, warranting the need for a trial.  *Bennett Estate v. Travelers Ins. Co*., 138 Vt. 189 (1980); *Sykas v. Kearns*, 135 Vt. 610 (1978).

The court agrees with MGM that the contact policy language separates the insured's duty to promptly notify MGM of a tentative settlement, and the duty to give them 30 days response time. They are separate obligations.   The notice and consent to settlement aspects of the policty are further discussed below.

The court also agrees with MGM that the contract policy terms in issue are not contractual liability disclaimers or exculpatory clauses, such as those discussed in *Colgan v. Agway, Inc.,* 150 Vt. 373 (1988).  *Colgan* and its progeny construe the validity of pre-injury exculpatory clauses, included in contracts to absolve the potential later active negligence of the party seeking protection. By "active" negligence, the court means these cases involve situations arising out of contractual dealings, where the negligence and conduct of the party seeking liability protection played a direct and proximate role in causing physical injury to the claimant or physical property damage.  Examples may include claims arising from construction contracts (*Colgan*); commercial leases (*Fairchild Square Co. v. Green Mountain Bagel Bakery Co., Inc.,* 163 Vt. 433 (1995)); and recreational events or competitions (*Provoncha v. Vt. Motorcross Ass'n., Inc*. , 2009 VT 29; *Dalury v. S–K–I, Ltd.,* 164 Vt. 329, 670 A.2d 795 (1995)).

These contract provisions receive a strict construction because they are attempts to exclude or avoid negligence and tort liability, and in fact do so before an injury has even occurred.  They arise out of a longstanding Vermont public policy that tort liability waivers implicate important public policies. See *Lamoille Grain Co. v. St. Johnsbury & Lamoille County R.R.,* 135 Vt. 5, 7 (1976); *Osgood v. Central Vermont Ry.,* 77 Vt. 334, 347 (1905).

By contrast the MGM notice-to-settle provisions are not an attempt by MGM to be relieved of its own negligence. They are a reasonable attempt by MGM to allow its insured to obtain the contracted-for UIM coverage benefits but allow the insurer (who played no role in causing the underlying loss) enforce its subrogation right to recover against the legally responsible party. The inclusion of such provisions in a policy cannot credibly be claimed to violate public policy.  Insurance companies, and the policies they issue, are regulated and reviewed by statutes and state agencies (BISHCA). Moreover, the legislature's enactment of the insurer subrogation statute, requiring insured customers to cooperate with the insurer's efforts to preserve its rights, establishes that such provisions should not be given the same construction as exculpatory clause provisions.

The UIM terms in issue are insurance contract provision. The rules of construction have been laid out in Vermont law:

> An insurance policy must be interpreted according to its terms and the evident intent of the parties as expressed in the policy language. *City of Burlington v. National Union Fire Ins. Co.,* 163 Vt. 124, 127, 655 A.2d 719, 721 (1994). Disputed terms are to be read according to their plain, ordinary and popular meaning. See *id.* at 127-28, 655 A.2d at 721. Whether a contract term is ambiguous is a question of law. See *Hunter Broadcasting, Inc. v. City of Burlington,* 164 Vt. 391, 395, 670 A.2d 836, 839 (1995).

> Any ambiguity in an insurance contract must be construed in favor of the insured. See *Garneau v. Curtis & Bedell, Inc.,* 158 Vt. 363, 367, 610 A.2d 132, 134 (1992). The insurer, however, should not be deprived of unambiguous provisions put into a policy for its benefit. See *Peerless Ins. Co. v. Wells,* 154 Vt. 491, 494, 580 A.2d 485, 487 (1990).

*Chamberlain v. Metropolitan Propr. & Cas, Ins. Co.*, 171 Vt. 513, 514 (2001).

Although insureds get the benefit of reasonable construction of ambiguous clauses, insurers may enforce reasonable, unambiguous clauses in the policy for their benefit. The contract provisions MGM relies upon are not ambiguous.

Although Mr. Crueller may have gotten down to "brass tack" or final settlement negotiations (and elicited a GEICO "tentative settlement") less than 30 days before the tort suit SOL ran, that does not precluding the insurer from generally enforcing the clause. Mr. Crueller knew of his potential claims since October 2009 when the collision occurred. He first made a GEICO written demand two months or so before the SOL was to expire. Nothing prevented him from informing MMG of the impending UIM claim at an earlier time. The court should not allow insureds, with the sole knowledge (between the insured claimant and their UIM carrier) that a tort claim is being pursued, to evade the UIM notice provision by stalling tortfeasor settlements until less than 30 days before the SOL runs. Allowing such behavior would unfairly eviscerate the insurers reasonable contract expectations, which include reasonable opportunity to seek subrogation if called upon to pay a UIM claim. Ability to exercise such subrogation rights are part of the insurer's actuarial factors it considers in setting UIM coverage premium levels.

The lack of proper notice or consent to settle the Crueller tort claims does not end the inquiry. The Vermont subrogation statute does not provide for any automatic UIM claim exclusion if the statute is breached. The UIM contract provision (Form CA 21 643 01 06) at its C.1 exclusion applies if the unconsented settlement "prejudices our rights to recover payments".

As MGM notes the Vermont Supreme Court has not expressly ruled on the effectiveness of a consent-to-settle exclusion when consent is not obtained. The Second Circuit, applying Vermont law, concluded the Vermont Supreme Court would enforce such a clause – even in the absence of a showing of actual prejudice – that is regardless of whether the released tortfeasor had any assets against which the subrogated insurer could pursue recovery. *Travelers Indem, Co. v. Eitapence*, 924 F.2d 48, 50 (2d Cir. 1991).

The court finds the *Eitapence* decision inapposite for two independent reasons.

1. there appears no showing that the UIM clause in issue in *Eitapence*, had an express contractual exclusion clause requiring the existence of ***prejudice*** to the insurer. The MGM contract language only mandates application of the exclusion if the insurer suffers prejudice. Regardless of how the prejudice issue might be viewed in the absence of such a contractual exclusion modifying provision – insurance contracts that provide greater coverage than what the law may mandate in UM/UIM situations are enforceable.

2. The court does not agree with the Second Circuit's view stated in *Eitapence* that under Vermont law the existence or non existence of actual prejudice on the case facts is irrelevant to a consent-to-settle exclusion's application in a particular case for three reasons.

First, the precedent the *Eitapence* court relied upon does not appear to go as far as it concluded. The federal district court and the Vermont Supreme Court have observed that consent-to-settle provisions in UIM policies can be consistent with the statutorily-required UM/UIM coverages because of the impact unconsented settlements "might have" or impacts that "may apply" to the insurers' subrogation rights. *Rhault v. Tsgarakos*, 361 F.Supp. 202, fn 3 (D.Vt. 1973); *Muir v. Hartford Acc. & Indem, Co.*, 147 Vt. 590, fn. 4 (1987). This is not such a broad endorsement of the enforceability of such clauses to mean they receive automatic application in all cases and even where the facts show no prejudice in fact. See also *Brunet v. American Insurance Co.*, 660 F. Supp. 853, 846 (D.Vt. 1987)(finding an insurance bad faith claim where a UIM carrier refused consent for its insured's settlement with a tortfeasor and his primary insurer, when the UIM carrier was presented with proof of no reachable assets against which to exercise its subrogation rights); *Keenan v. GEICO Gen. Ins. Co.*, 2011 WL 84672922, Docket 604-8-09 Wrcv, 11/30/11 (Hayes, J)(declining to award an excess UIM carrier summary judgment, for breach of a consent-to-settle clause, where the insurer failed to show actual prejudice resulted from the tortfeasor settlement, such as actual compromise of its subrogation rights).

Second, following the *Eitapence* decision the Vermont Supreme Court has squarely held, in an insurance case where the insurer sought to void coverage to its insured for a liability claim, due alleged "late notice" of the claim, that the insurer could not doing so without a showing of actual prejudice:

`"[W]e hold that an insurer which seeks to be relieved of its obligations under a liability insurance policy on the ground that the notice provision was breached must prove that the breach resulted in substantial prejudice to its position in the underlying action."

*Cooperative Fire Ins. Assn. of Vermont, Inc. v. White Caps, Inc*., 166 Vt. 355, 356 (1997). The *White Caps* Court noted that "in cases where a late notice does not harm the insurer's interests, the reason for the notice clause has not been undermined."

There is no reason to conclude, if confronted with a consent to settle clause in a UIM or UM policy that the Vermont Supreme Court would take a different approach. In both situations the claimant is an insurer's customer who has paid a premium. Even with a reasonably founded contract notice/ consent provision, when there is breach that results in no harm to the insurer, the technical breach should not work a contract forfeiture.

Third, this court's construction of the consent-to-settle provision as requiring an insurer showing of actual prejudice to the insurer is consistent with the clear majority position of courts which have considered this issue.  See  example, *Hernandez v. Gulf Grp. Lloyds,* 875 S.W.2d 691, 692 (Tex.1994) ("We hold that an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with the tortfeasor."); *Ferrando v. Auto-Owners Mut. Ins. Co*., 98 Ohio St. 3d 186, 781 N.E.2d 927 (2002); *State Farm Mut. Auto. Ins. Co. v. Fennema,* 137 N.M. 275, 110 P.3d 491, 492 (2005)("[W]e hold that for an insurer to justify foreclosing an insured's right to underinsured motorist benefits, the insurer must demonstrate it was substantially prejudiced by the insured's breach of the consent-to-settle provision."); *Hasper v. Center Mut. Ins. Co*., 723 N.W.2d 409, 413-414 (N.D. 2006)(citing cases from numerous jurisdictions[1] holding the "insurer

---

[1] *Shelter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637, 640 (1992) (insurer failed to show insured's unauthorized settlement with tortfeasor and tortfeasor's insurance carrier prejudiced its right of subrogation or possible recovery from tortfeasor or any other potentially liable party); *Taylor v. Government Employees Ins. Co.,* 90 Hawai'i 302, 978 P.2d 740, 749 (Haw.1999) (legitimate invocation of consent-to-settle provision requires insurer to demonstrate prejudice from insured's failure to obtain insurer's consent before settling with tortfeasor); *Bantz v. Bongard,* 124 Idaho 780, 864 P.2d 618, 624 (Idaho 1993) (consent-to-settle clause should not be enforced to work forfeiture of coverage unless insurer can show actual prejudice from settlement); *Hoel v. Crum & Forster Ins. Co.,* 51 Ill.App.3d 624, 9 Ill.Dec. 390, 366 N.E.2d 901, 905 (1977) (insurer must demonstrate it was actually hampered or substantially prejudiced by settlement); *Kapadia v. Preferred Risk Mut. Ins. Co.,* 418 N.W.2d 848, 852 (Iowa 1988) (insurer must demonstrate actual prejudice by showing it could have collected from tortfeasor under subrogation clause); *Greenvall v. Maine Mut. Fire Ins. Co.,* 1998 ME 204, ¶ 11, 715 A.2d 949 (insurer must demonstrate prejudice from insured's failure to obtain insurer's consent to settlement); *MacInnis v. Aetna Life & Cas. Co.,* 403 Mass. 220, 526 N.E.2d 1255, 1258 (Mass.1988) (insurer must prove material prejudice resulting from insured's unauthorized settlement); *Sorensen v. Farmers Ins. Exch.,* 279 Mont. 291, 927 P.2d 1002, 1005 (1996) (insured not barred from collecting on policy if insurer is unable to demonstrate prejudice); *Silvers v. Horace Mann Ins. Co.,* 324 N.C. 289, 378 S.E.2d 21, 27-28 (1989) (insurer bears burden of proving it was materially prejudiced by insured's unauthorized settlement); *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692-93 (Tex.1994) (consent-to-settlement exclusion unenforceable absent showing of prejudice by insurer); *State Farm Mut. Auto. Ins. Co. v. Green,* 2003 UT 48, ¶ 32, 89 P.3d 97 (requiring insurer to show actual prejudice strikes appropriate balance between protecting insurer's interest and avoiding forfeiture when insurer was not harmed); *Kronjaeger v. Buckeye Union Ins. Co.,* 200 W.Va. 570, 490 S.E.2d 657, 669 (1997) (to justify refusal to pay underinsured benefits, insurer must show prejudice from insured's unauthorized settlement); *see also* 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 124.8 (3d ed.2005); 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 43.5 (3d ed.2005); *cf. American Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 927 (Minn.1990) (unauthorized settlement raises a presumption of prejudice and insured bears the burden of showing the absence of prejudice); *Ferrando v. Auto-Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 781 N.E.2d 927, 946-47 (Ohio 2002) (insured's breach of a consent-to-settle clause raises a presumption of prejudice to the insurer, and the insured bears the burden of presenting evidence rebutting the presumption); *Ranes v. American Family Mut. Ins. Co.,* 219 Wis.2d 49, 580 N.W.2d 197, 202 (Wis.1998) (a presumption of prejudice arises from an

has the burden of establishing that an unauthorized settlement had an actual adverse impact on the insured's interests"); *Myers v. Nationwide Mut. Ins. Co.*, 959 So.2d 298, 300 (Fla. Appl. 2007)(applying NC law); Nationwide Ins. Co. v. Schneider, 960 A.2d 442 (Pa. 2008); *Muth v. AUI Ins. Co.*, 982 So.2d 749, 752 (Fla. App. 2008); *Beal v. Allstate Ins. Co.,* 989 A.2d 733, 745 (Me.2010)("If [the insurer] did not consent to the settlement, then [the insured] could still be entitled to recover [underinsured motorist] benefits unless [the insurer] could 'demonstrate prejudice as a result of the loss of subrogation rights' 'from the insured's failure to obtain the insurer's consent before settling with the tortfeasor.' " (quoting *Greenvall v. Me. Mut. Fire Ins. Co.,* 715 A.2d 949, 954 (Me.1998))).

As described by one well regarded treatise writer, "[t]he loss of an insurer's subrogation right may not be significant" because "[i]in many instances, pursuit of any recovery from an insured tortfeasor beyond the available liability insurance would be fruitless." 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance*, section 43.5 at 558-59 (3d, ed, 2005).

As the *Hasper* Court (citing Widiss, *supra*, at section 43.4, stated, there are reasons to place the burden of proving actual notice on the insurer:

> There are several rationales for this approach. First, the insurer is in the best position both to assess whether it has been prejudiced and to then produce evidence for the court that is relevant to an adjudication. Second, in effect, it recognizes the difficulty of requiring a claimant to attempt to prove the "negative fact" that the insurer was not prejudiced. Finally, if no clear proof is available, such an allocation serves to avoid a forfeiture of coverage.

723.N.W.2d at 415.

Consequently, the summary judgment motion must be denied. There are fact issues if the insurer has suffered actual prejudice from impairment of its subrogation rights due to the lack of notice and consent. Plaintiff should be able to develop facts in this regard such as the insurers' practices and policies in giving consent when notified of settlements in UIM cases, and any policies MGM may have as to minimum available tortfeasor assets it may require before withholding consent to settle in cases where its consent is sought. Discovery may also occur as to Mr. Grimes' available assets as of the time the settlement occurred.

The motion for summary judgment is DENIED.

Electronically signed on August 28, 2017 at 09:35 AM pursuant to V.R.E.F. 7(d).

_____

Michael J. Harris

―――――――――――――――――

insured's failure to provide notice of settlement, and the insured bears the burden of rebutting the presumption).

Superior Court Judge

David G. Miller (ERN 4472), Attorney for Plaintiff Kevin Creller
John J. Boylan (ERN 1881), Attorney for Defendant MMG Insurance Company