785 P.2d 231

**Carl I. VIDAL, Plaintiff–Appellant,**

v.

**AMERICAN GENERAL COMPANIES and American General Fire and Casualty Company, Defendants–Appellees.**

**No. 18143.**

Supreme Court of New Mexico.

Jan. 11, 1990.

William G. Gilstrap, Albuquerque, for appellant.

Gallagher, Casados & Mann, P.C., J.E. Casados, M. Clea Gutterson, Albuquerque, for appellees.

## OPINION

BACA, Justice.

Vidal, plaintiff below, appeals the district court's grant of American General Fire & Casualty Company's (American General) motion for summary judgment. The trial court granted the defendants' motion, determining that because plaintiff had violated a clause in its insurance policy with American General by settling with a third-party tort-feasor without the insurer's consent, the company was not obligated to pay Vidal's underinsured motorist claim. Vidal contends that the trial court should consider the factual issue of whether American General's own settlement with the tort-feasor extinguished its right of subrogation, thereby estopping the insurer from relying on the consent clause, before finding that American General is relieved of its insurance obligation. We agree, and reverse and remand to the district court for further consideration in accordance with this opinion.

*Facts*

Because this is an appeal from the grant of a motion for summary judgment, we consider the facts as presented by the appellant, construing the evidence in a light most favorable to him, for the purposes of this appeal. *Gomez v. Board of Educ.,* 85 N.M. 708, 709, 516 P.2d 679, 680 (1973).

Vidal was involved in an automobile accident, colliding with a car driven by Sally Hunt. At the time of the accident, Vidal was insured under a policy issued by American General. Vidal notified American General of the accident, and appropriate files were set up to cover medical payments. Subsequently, Vidal notified American General of a claim for underinsured motorist benefits, because Hunt reportedly was insured only for minimum liability limits. A lawsuit was then filed by Vidal against Hunt, and Hunt counterclaimed, with American General retaining counsel to defend.

American General noted the possibility that Vidal would file an underinsured motorist claim and that American General would have a possible subrogation claim against Hunt and her insurance carrier for medical payments to Vidal.

The lawsuit proceeded to settlement, with Vidal agreeing to settle for the limit of Hunt's insurance policy. American General, meanwhile, authorized settlement of Hunt's counterclaim for nuisance value. Pursuant to their settlement, Vidal and Hunt executed releases of their claims and subsequently filed a joint motion to dismiss their suit with prejudice. American General apparently was not aware that Vidal had settled his claim with Hunt at about the same time that the insurer had settled Hunt's claim.

Vidal subsequently informed American General that he intended to pursue his underinsured motorist claim. American General denied the claim, maintaining that its subrogation rights had been destroyed due to Vidal's settlement of his claim with Hunt without the insurer's consent in violation of the insurance contract.

Vidal's insurance policy contained an exclusionary clause, which read: "We do not provide uninsured motorist coverage for property damage or bodily injury sustained by any person: (1) if that person or the legal representative settles the bodily injury or property damage claim without our consent." (Hereinafter referred to as the consent clause.)

Two issues have been presented for our consideration: (1) whether the insurer, by itself settling with the tort-feasor, has extinguished its own subrogation rights and nullified its right to rely on the consent to settle clause vis-a-vis the insured; and (2) whether the insured's settlement with the tort-feasor without the insurer's consent automatically releases the insurer from further liability, even if the insured can demonstrate that the insurer was not prejudiced by the settlement.

We agree with appellant's position regarding the first issue—that judgment for the insurer is conditional upon its showing that its own settlement with the tort-feasor did not extinguish its subrogation rights— and we remand accordingly. Because our resolution of the first issue is sufficient to support our determination that summary judgment was inappropriate, we will not address the question of prejudice.

### Did the Insurer's Own Settlement Nullify Its Lack of Consent to the Insurer's Settlement?

American General contends that its own settlement with Hunt does not void Vidal's failure to adhere to the clause. It argues for a plain reading of the contract, stating that its validity has been upheld in New Mexico and that it is an unambiguous exclusionary clause.

Vidal maintains that, despite the plain language of the contract, we should focus on the purpose of the clause: to avoid interference with the insurer's subrogation rights. He argues that, because American General abandoned its subrogation rights of its own accord, his own breach of the clause was irrelevant and the clause should be found a nullity under the circumstances.

In *March v. Mountain States Mutual Casualty Co.*, 101 N.M. 689, 687 P.2d 1040 (1984), we addressed the validity of a consent clause with regard to an underinsured motorist claim. We found it well established that the insured's settlement with or release of a tort-feasor in violation of an express consent clause destroys the insurer's right of subrogation, and that the purpose of the clause "is to protect the insur-

er's subrogation rights." *Id.* at 692, 687 P.2d at 1043. We further held that the clause is effective in protecting the insurer's right of subrogation and does not undermine our public policy in the underinsured motorist area. *Id.* at 693, 687 P.2d at 1044. However, *March* is not dispositive on the issue presented in this appeal.

■ New Mexico precedent indicates that a release given by one party pursuant to a settlement with a second party constitutes an accord and satisfaction of all claims between the two parties arising out of the incident giving rise to the liability, absent an express reservation of rights by the settling party. *Harrison v. Lucero,* 86 N.M. 581, 584, 525 P.2d 941, 944 (Ct.App. 1974). Thus, the settling party is estopped from pursuing a claim of negligence against the other. *Id.; cf. Landin v. Yates,* 98 N.M. 591, 651 P.2d 1026 (Ct.App. 1982). *Harrison* relied upon *Wm. H. Heinemann Creameries, Inc. v. Milwaukee Automobile Insurance Co.,* 270 Wis. 443, 71 N.W.2d 395, *reh'g denied,* 270 Wis. 443, 72 N.W.2d 102 (1955), where the court found an accord and satisfaction and estopped the insurance company plaintiff from pursuing indemnification subsequent to a compromise settlement with the defendant, basing its decision in principles of equity and the common-sense assumption that the settlement indicated to the defendant that the insurer had no claim against him arising out of the accident.

American General contends, however, that the cited authority is inapplicable because it was decided prior to *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981), where we adopted pure comparative negligence as a theory of apportioning tort liability. American General suggests that *Harrison* and *Heinemann* actually decided that the settlement constituted an admission of negligence by one party, thus barring suit on the other party's negligence under a contributory negligence rationale. Under comparative negligence, however, the insurer argues that an admission of negligence by one party is not a bar to his recovery for the negligence of the other; therefore, the rule of *Harrison* estopping the settlor from subsequent suit can no longer apply.

Although several courts adopting a rule similar to that articulated in *Harrison* have seemed to have grounded their decisions in just such a rationale, *see, e.g., Burke v. Shaffer,* 184 Neb. 100, 101, 165 N.W.2d 352, 353 (1969) ("The theory of the rule is that it is logically and factually impossible to reconcile a valid claim by one party with a valid claim by the adverse party."), it is apparent that the rule is not necessarily based in contributory negligence theory. *Harrison* based the rule on principles of accord and satisfaction, the presumption that the parties intended to resolve their claims. *See also Cyr v. Cyr,* 560 A.2d 1083 (Me.1989); *Far West Financial Corp. v. D & S Co.,* 46 Cal.3d 796, 760 P.2d 399, 251 Cal.Rptr. 202 (1988); *Ohio Casualty Ins. Co. v. Nauth,* 5 Wis.2d 518, 520, 93 N.W.2d 514, 516 (1958) ("The rationale of [the *Heinemann* holding] was that the parties, in entering into such a settlement, will be presumed to have intended a complete accord and satisfaction of their respective claims against each other arising out of the accident. Such presumption is grounded upon public policy in order to avoid needless litigation.") This interpretation is bolstered by the fact that Wisconsin, whose accord and satisfaction rule we assumed, adopted comparative negligence in 1931, some twenty years before it adopted the rule at issue here. *See* Wis.Stat.Ann. § 895.045 (1983); Campbell, *Wisconsin's Comparative Negligence Law,* 7 Wisc.L. Rev. 222, 225 (1931). Thus, it is evident that the rule operates independently of comparative negligence principles.

■ A settlement is presumed to create an accord and satisfaction. *Nauth,* 5 Wis.2d at 520, 93 N.W.2d at 516. However, the presumption may be rebutted if the appropriate elements are not present, most significantly a meeting of the minds. *Austin v. Cox,* 492 So.2d 1021, 1022 (Ala. 1986). Thus, for example, estoppel may not lie for claims accruing subsequent to the settlement. *Martin v. Guttermuth,* 403 S.W.2d 282, 283 (Ky.Ct.App.1966).

Accordingly, we hold that American General's settlement with Hunt may have constituted an accord and satisfaction, if the appropriate factual predicate is found, and that the insurer may have been estopped from asserting a subsequent claim for subrogation. The purpose of the consent clause is to protect the insurer's right of subrogation, and if that right has been voluntarily relinquished by American General, it will not be able to rely on the clause to deny Vidal coverage. The fact finder should determine whether the parties intended an accord and satisfaction, considering, *inter alia,* whether the insurer expressly reserved its right to assert its own claims and whether subsequent claims arose that the insurer was not aware of when it settled. It bears noting that the insurer bears the burden of proving that the settlement did not constitute an accord and satisfaction. We therefore remand to the district court for consideration in accordance with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.