814 P.2d 89

Joan M. BENNETT, Petitioner,

v.

Dick KISLUK, Respondent.

No. 19294.

Supreme Court of New Mexico.

June 26, 1991.

Rehearing Denied Aug. 9, 1991.

Morrison & Martinez, Robert Dale Morrison, Albuquerque, for petitioner.

Freedman, Boyd & Daniels, John W. Boyd, Albuquerque, for respondent.

## OPINION

RANSOM, Justice.

Joan Bennett sued her former attorney, Dick Kisluk, alleging malpractice, intentional infliction of emotional suffering, and misrepresentations that warranted treble damages under NMSA 1978, Section 36-2-17 (Repl.Pamp.1984) (attorney guilty of deceit or collusion liable for treble damages). The trial court granted summary judgment in favor of Kisluk based upon a release Kisluk gave Bennett for the payment to him of attorney fees for services rendered

prior to his discharge in a personal injury suit. Bennett was represented by another lawyer in the settlement of the personal injury suit that resulted in the payment to Kisluk. Relying on the authority of *Harrison v. Lucero*, 86 N.M. 581, 525 P.2d 941 (Ct.App.1974) (unilateral release effects an accord and satisfaction of all claims between the parties irrespective of actual intent), the court deemed the release to constitute an accord and satisfaction of Bennett's claims. The court of appeals affirmed by an unpublished memorandum opinion. We granted certiorari to review the applicability of *Harrison* to the facts of this case, and we now reverse.

*Facts.* In July 1985, Bennett hired Kisluk to prosecute her claims arising from a slip and fall accident in an Albuquerque restaurant. Kisluk filed suit in January 1988, and by May 1988 he had begun to discuss structured settlement offers with the restaurant's insurance carrier. Bennett became dissatisfied with Kisluk's services. In September 1988, Bennett dismissed Kisluk and retained new counsel, Roger Wagman, to pursue her claims. Kisluk refused to withdraw from the case, and he advised Bennett that she would have to pay him forty percent of any recovery, in addition to the customary one-third fee paid to her new attorney. Bennett sought and obtained an order from the district court compelling Kisluk to withdraw.

On December 21, 1988, after receiving notification that Bennett's suit was nearing settlement, Kisluk filed a motion to recover attorney fees, seeking a forty percent share of any recovery by Bennett. In early January 1989, Bennett reached agreement with the restaurant's insurance carrier on settlement of her personal injury claim. However, to consummate the personal injury settlement she was compelled to reach an agreement on the amount of attorney fees to be paid Kisluk. Pursuant to the fee settlement, Kisluk executed both a Stipulation for Settlement and a Release of All Claims. The stipulation reflected settlement of Bennett's claims against the restaurant and the settlement of claims to attorney fees both by Kisluk and Wagman. The release, at issue here, provided that Kisluk, in consideration of receipt of his attorney fees, released Bennett and Wagman from all claims he had or may have against them, including all claims arising from Bennett's personal injury action. Five months after execution of the stipulation and release, Bennett brought this suit against Kisluk.

*Summary judgment was improvidently granted.* We believe the courts below erroneously applied the rule of *Harrison* as recently discussed by this Court in *Vidal v. American General Companies*, 109 N.M. 320, 785 P.2d 231 (1990). *Harrison* arose from an automobile accident between vehicles driven by Harrison and Lucero, an employee of Universal Constructors, Inc. Two months after the accident, Lucero signed a written release of any claim against Harrison in consideration of $300 paid by Harrison to Lucero. Nine months later, Harrison sued Lucero and Universal. Lucero counterclaimed against Harrison, and Harrison replied by asserting the release as an affirmative defense. Universal filed an amended answer, asserting that the release signed by Lucero barred Harrison's action. The trial court struck Universal's defense, and on interlocutory appeal the court of appeals reversed, holding that a party who obtains a release from another party for adequate consideration to settle any claims that the second party may have had against the first is barred from bringing an action against that second party for damages absent a reservation of rights. *Harrison*, 86 N.M. at 584, 525 P.2d at 944. The court reasoned:

> We are not dealing with the interpretation of the language of the release nor the intention of the parties as expressed therein, because in all probability the parties did not consider the question of whether the release given by Lucero to Harrison would bar future legal action by Harrison against Lucero. On the basis of public policy we therefore conclude that the release given by Lucero to James Harrison without an express reservation of the right to make a claim against Lucero constitutes an accord and satisfaction of all claims between them

arising out of the accident and James Harrison is estopped from proceeding against Lucero and therefore constitutes a valid defense.

*Id.*

In *Vidal* we explained the basis for the *Harrison* rule and modified its application. Vidal, insured by American General Companies, was involved in an automobile collision with Hunt. Vidal notified American General of a claim for underinsured motorist benefits because Hunt was insured only for minimum liability limits. Vidal sued Hunt, and Hunt counterclaimed. American General settled Hunt's counterclaim for nuisance value. Apparently without American General's knowledge, Vidal at about the same time settled his claim with Hunt for the limits of Hunt's insurance policy. When Vidal pursued his claim against American General for underinsured motorist benefits, American General denied the claim, maintaining that its subrogation rights had been destroyed by Vidal's settlement without the insurer's consent in violation of the insurance contract.

American General moved for summary judgment. Vidal responded that American General's own settlement with Hunt extinguished its right of subrogation. Summary judgment was awarded American General, and this Court reversed. We agreed with Vidal that, because the purpose of a consent clause is to protect the insurer's right of subrogation, if that right is voluntarily relinquished by the insurer the latter cannot rely on the clause to deny coverage. We held, nonetheless, that while a settlement is presumed to create an accord and satisfaction, the presumption may be rebutted if the appropriate elements are not present, most significantly a meeting of the minds. *Id.* at 323, 785 P.2d at 234. It was for the factfinder to determine whether the parties intended an accord and satisfaction, considering, inter alia, whether the settling party expressly reserved its right to assert its own claims and whether claims of which it was not aware at settlement arose subsequently.

We noted in *Vidal* that the presumption of accord and satisfaction operates independently of contributory negligence principles. We observed that the *Harrison* rule was founded upon a legal presumption that the release and settlement were intended by the parties to resolve conclusively their dispute. That presumption arises not from an express or implied admission of liability that would preclude recovery by the releasee under the doctrine of contributory negligence, but on the presumption that the parties intended a complete accord and satisfaction of their respective claims against each other arising out of the accident. The presumption advances public policy interests in avoiding needless litigation and places on the releasee a burden to prove the contracting parties did not, by the release and settlement, intend an accord and satisfaction. *Id.* at 323–24, 785 P.2d at 234–35. Under the facts of that case, Vidal was entitled to the presumption of an accord and satisfaction between American General and Hunt; and American General consequently had the burden of proving that Hunt's release, given to American General who paid Hunt the nuisance value of Hunt's claim, was not intended to settle the subrogation claim of American General.

The releasee's burden is greatest in attempting to overcome a presumption of accord and satisfaction under a contributory negligence regime, wherein a release and settlement raise a strong inference of an express or implied admission of liability. The doctrine of proportionate fault under comparative negligence or, as here, the enforcement of any rights that are correlative but not mutually exclusive gives rise to less compelling implications. In any event, it is incumbent upon the releasee to prove the parties did not intend a universal accord and satisfaction. Discharge of an existing contractual obligation or settlement of a cause of action by an accord and satisfaction means (1) substituting an agreement (accord) for the obligation or cause of action, and (2) performing the substituted agreement (satisfaction). *National Old Line Ins. Co. v. Brown,* 107 N.M. 482, 484, 760 P.2d 775, 777 (1988). As with any contract, an accord requires offer

and acceptance. *Id.*[1] Therefore, in the face of a presumption that the parties intended a complete settlement of their respective claims, Bennett had the burden of proving the offer that was accepted encompassed only Kisluk's claim. In doing so, she cannot rely simply upon the negative inference of a release that names certain claims and not others that potentially might arise out of the same general circumstances. That is what the presumption is meant to overcome.

Here, each party speculates the other party was "lying in the weeds" in an attempt to "sandbag" the first party by not expressly including or excluding the right of the releasee to make a claim against the releasor. Admittedly, no overt manifestation of agreement encompassed the claims of Bennett. Asserting that the possibility of Bennett's claims of malpractice, intentional infliction of emotional suffering, or misrepresentations never entered his mind in connection with the settlement of his own claim to attorney fees and the related release signed by him, Kisluk simply relies upon the language from *Harrison* that the accord and satisfaction is not dependent upon the interpretation of the language of the release or the intent of the parties. Bennett, on the other hand, asserts that she at all times intended to pursue her claims against Kisluk, but was concerned here only with the resolution of his claim to attorney fees that, over an unduly prolonged period of time, had prevented consummation of the personal injury settlement. Under these circumstances, the language of the release cannot be said, upon a motion for summary judgment, to be a universal accord and satisfaction. From both the overt manifestations of agreement and the states of mind of the parties it can be inferred that the parties did not intend a universal accord and satisfaction. Under SCRA 1986, 11–301 (rule of evidence regarding presumptions in general in civil

actions), these inferences are to be weighed by the trier of fact against the presumption. *See Mortgage Inv. Co. of El Paso v. Griego,* 108 N.M. 240, 771 P.2d 173 (1989) (whether or not a party against whom presumption is directed has met burden of proof, presumed fact does not disappear).

*Res judicata.* Kisluk asserted as an independent basis for summary judgment the res judicata effect of the settlement of his claim for fees. Kisluk argues that by his motion for attorney fees he was deemed, without objection, an intervenor in the action, and Bennett's claim for malpractice was a compulsory counterclaim to his motion. While the nature of the claim to attorney fees is related substantially enough to Kisluk's efforts to effect the settlement and to his discharge without cause so as to have given rise to a compulsory counterclaim for malpractice to a *complaint for collection of professional fees,* we are hesitant to accord res judicata effect to all issues and claims that might have been raised in response to a *motion* for fees. Whether Bennett's claim for malpractice was a compulsory counterclaim to Kisluk's motion for fees depends on whether Kisluk was an "opposing party" within the meaning of SCRA 1986, 1–013(A). An "opposing party" must be one who asserts a claim against the prospective counterclaimant in the first instance. Here, we hold that Kisluk, by virtue of his motion for fees, was not in the adversarial relationship with Bennett that would trigger the compulsory counterclaim rule and its attendant res judicata effect.

Accordingly, we reverse and remand for trial, including the factual issue whether the parties intended a universal accord and satisfaction.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.

---

1. While in *Vidal* we employed the term "meeting of the minds" to describe the formation of an accord, here we choose the terms offer and acceptance to describe that process. The operative analysis under either is whether the offer is made in full satisfaction of all claims and whether the offeree accepted the offer as such. *See, e.g., Smith Construction Co. v. Knights of Columbus, Council,* 86 N.M. 50, 52, 519 P.2d 286, 288 (1974) (listing elements of accord and satisfaction).

FRANCHINI, J., dissents.

SOSA, C.J., concurs in dissent.

FRANCHINI, Justice (dissenting).

I respectfully dissent. The majority contends that the language of the release "cannot be said, upon a motion for summary judgment, to be a universal accord and satisfaction." What the majority does not state is how, under our holding in *Vidal v. American General Companies,* 109 N.M. 320, 785 P.2d 231 (1990), Bennett rebutted the presumption of an accord and satisfaction. I agree with the court of appeals that Bennett cannot, simply by stating in an affidavit that there was no meeting of the minds, satisfactorily rebut the presumption in order to defeat summary judgment. To allow this would effectively destroy the rule of *Harrison v. Lucero,* 86 N.M. 581, 525 P.2d 941 (Ct.App. 1974), and *Vidal.* In *Vidal,* we contemplated rebuttal in two specific areas: (1) the insertion of a reservation of rights into the release, and (2) the possibility of claims arising after the release. Neither of these are present in this case.

The policy of avoiding needless litigation fostered by the perception that parties intend to settle all their differences is particularly appropriate in this case. At the time of the release and stipulation for settlement, Bennett knew of all facts giving rise to her claims against Kisluk for malpractice and emotional distress. In that settlement, Kisluk accepted a fee of approximately thirteen percent which was a substantial reduction of the forty percent called for by the original fee agreement between him and Bennett. Furthermore, the release was part of an agreement that included a "stipulation for settlement" signed by Bennett, her new attorney, Kisluk and his attorney, and which expressly stated:

all parties are desirous of compromising and settling all matters in this case and desire by stipulation and agreement thereon to dispose of any and all claims of liability arising out of the injuries sustained by Plaintiff by reason of the accident which is the subject matter of this Complaint, and to dispose of any and all issues concerning attorney's fees; * * *.

In view of the foregoing, I cannot find that Bennett rebutted the presumption of an accord and satisfaction to defeat the rule of *Harrison* and *Vidal.*

I also disagree with the majority in their refusal to apply the doctrine of res judicata to the settlement of attorney's fees. Res judicata applies when the second suit has the following relationship with the first suit: (1) The parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits. *First State Bank v. Muzio,* 100 N.M. 98, 100, 666 P.2d 777, 779 (1983). The parties are the same and there was a final decision on the merits of this case. "Dismissal with prejudice constitutes an adjudication of the merits and is therefore res judicata of the issues between the parties." *Campos v. Brown Constr. Co.,* 85 N.M. 684, 686, 515 P.2d 1288, 1290 (1973).

Even though the cause of action in the settled suit was for attorney's fees, the same evidence is necessary to develop whether Kisluk is entitled to a fee as is required to develop whether he is guilty of malpractice. New Mexico defines "cause of action" as follows:

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * * the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 695, 652 P.2d 240, 245 (1982) (reversed on other grounds); *Universal Life Church v. Coxon,* 105 N.M. 57, 728 P.2d 467 (1986), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2482, 96 L.Ed.2d 374 (1987).

If parties agree to reserve certain claims for later litigation, they must do so by express language in the settlement documents. *Medina v. Wood River Pipeline*

**226**

*Co.*, 809 F.2d 531 (8th Cir.1987); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498 (11th Cir.1990).

Bennett is asking that we apply the *opposite* rule. She would have us reserve any claim that is not specifically mentioned in the settlement and dismissal. This would nullify res judicata because it would require all parties to enumerate all identifiable legal claims they were relinquishing whenever any litigation was settled. I am opposed to establishing this kind of rule. I strongly believe that litigation of legal fees necessarily disposes of any issue of malpractice. *Felger v. Nichols*, 35 Md.App. 182, 370 A.2d 141 (1977).

In *Nat Kagan Meat & Poultry, Inc. v. Kalter*, 70 A.D.2d 632, 632, 416 N.Y.S.2d 646, 647 (1979), the court stated:

A judicial determination fixing the value of a professional's services necessarily decides that there was no malpractice [citation omitted]. This rule applies where an attorney seeks a charging lien for services rendered by him in the underlying action * * * as well as to a plenary action for nonpayment of attorney's fees. The fact that [the prior case] * * * involve[d] an in rem proceeding, in that the lien only applie[d] to the proceeds of the underlying judgment [citation omitted] does not make said rule inapplicable * * *.

Bennett was not tricked into giving up her malpractice claim against Kisluk; all of her allegations in this regard were contained in her motion for substitution of counsel. Malpractice is an affirmative defense to a suit for attorney's fees and must be properly asserted or be deemed waived. *May's Family Centers, Inc. v. Goodman's Inc.*, 104 F.R.D. 112, 117 (N.D.Ill.1985); *Krimsky v. Lombardi*, 78 Misc.2d 685, 357 N.Y.S.2d 671 (1974).

Aside from the res judicata effect of the settlement, respondent's abandonment of most of the attorney's fees negotiated in his contract with petitioner constitutes payment by him in the settlement and should extinguish his liability and terminate the lawsuit.

Finally, I can see no ethical constraints on Kisluk signing the settlement documents prepared by Bennett's lawyer.

There is nothing in the relationship between them that would preclude the applicable general principle of law as to settlements. Kisluk was not Bennett's lawyer when they reached a settlement. He was no longer advising her, and was not relying at all upon her settlement with Pacific Partners, but on her settlement with him. I would affirm the trial court and the court of appeals.

Because the majority opinion is contrary to this conclusion and analysis, I must respectfully dissent.

SOSA, Chief Justice (concurring in dissent).

I also respectfully dissent. I feel that when the motion for attorneys fees put in issue the entitlement to legal fees, that a corollary to this is that it also placed in issue any offset as to attorneys fees and of necessity the issue of legal malpractice should have been raised. The failure to raise the issue then, in my judgment, was a waiver thereof.

For all of the reasons raised in the dissent, together with the above reason which I have stated, I must respectfully dissent.