**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 49299**

| | | |
|---|---|---|
| KELLY LYNN CHRISTMANN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, February 2023 Term |
| | ) | |
| v. | ) | Opinion filed: September 15, 2023 |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, | ) ) ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K.C. Meyer, District Judge.

The judgment of the district court is <u>reversed</u> and the case is <u>remanded</u>.

Christensen & Jensen, P.C., Salt Lake City, Utah, and Craig Swapp & Associates, Spokane Valley, Washington, for Appellant. Sara E. Spencer argued.

Haman Law Office, Coeur d'Alene, for Respondent. Michael Haman argued.

_____

MOELLER, Justice.

After suffering personal injuries and property damage in a multi-car collision with an underinsured motorist, Kelly Lynn Christmann initiated this action against her insurer, State Farm Mutual Automobile Insurance Company ("State Farm"). Christmann was seeking to obtain the underinsured motorist benefits provided under her contract of insurance, which she claimed State Farm failed to pay in an amount justly due under her policy. She also alleged that certain terms of her insurance agreement violate public policy. State Farm argued that Christmann waived her rights to additional benefits by failing to comply with the contractual obligations of her insurance policy, thereby prejudicing State Farm's right to subrogation against the underinsured motorist.

The district court awarded summary judgment to State Farm in determining it had been prejudiced by Christmann's conduct and that the terms of the insurance policy were valid. The court also denied Christmann's motion for reconsideration and her Rule 60(b) motion for relief.

1

Christmann appealed. Because the record shows that State Farm fully settled its claims against the underinsured motorist and waived its subrogation rights, we conclude that it suffered no actual prejudice from Christmann's actions. Accordingly, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At all times relevant to this case, Kelly Lynn Christmann was a resident of Idaho. On January 20, 2016, Christmann was in a car accident in Spokane, Washington.[1] Christmann had come to a stop at an on-ramp on Interstate 90 as she prepared to merge into traffic. The car behind her slowed to stop but the next vehicle—driven by Bryan Booth—rear ended the slowing vehicle, causing it to crash into the rear of Christmann's car. At the time of this accident, Booth was insured by USAA and Christmann was insured by State Farm. Christmann's insurance policy included underinsured motorist ("UIM") benefits, with limits of $100,000 per person and $300,000 per occurrence.

Christmann claimed that Booth was liable for the personal injuries and property damage she sustained in the collision. She pursued settlement with USAA, which offered the full $25,000 in bodily injury liability limits available under Booth's policy. Christmann then informed State Farm of USAA's tender and stated that she wanted to accept this offer so that she could pursue additional UIM benefits provided by her State Farm insurance policy. She also asked State Farm to waive its subrogation claim. State Farm did not consent to the settlement and bought out the claim by tendering the USAA limits to Christmann in the amount of $25,000. It explained that "[a]ny recovery from or on behalf of the owner or driver of the underinsured motor vehicle shall first be used to repay [State Farm]." Throughout their correspondence, State Farm informed Christmann that it was not waiving its subrogation rights under the policy.

Christmann's counsel wrote to State Farm stating her position that any judgment to be obtained against Booth "must be pursued by State Farm," and that Christmann did not intend to seek any recovery against Booth herself. Her counsel wrote: the "suggestion that State Farm is entitled to an assignment on any judgment against Mr. Booth is perplexing." State Farm responded by noting the language from the UIM portion of Christmann's policy and explained that "the owner or driver of the underinsured motor vehicle must be included in the lawsuit and therefore [State

---

[1] Kelly Lyn Christmann was known as Kelly L. Miller at the time of her accident. While the name Kelly Miller appears in much of the record as the policy holder with State Farm, this opinion will address her by her current surname to avoid confusion.

Farm] would be entitled to an assignment, in the amount of [its] payment, of any judgment against the owner or driver of the underinsured motor vehicle."

By May 30, 2017, State Farm had paid Christmann $10,000 under her medical coverage, a $25,000 advance representing Booth's liability limits, and $18,800 under her UIM coverage, for a total of $53,800. However, the parties were at an impasse as to the full value of Christmann's claim, with Christmann claiming the value exceeded $53,800.[2] Christmann wrote to State Farm asking if it would agree to pay the costs of litigation against Booth, since the policy "is requiring [her] to pursue legal action." State Farm responded that if Christmann wished "to proceed against [it], she must also file a lawsuit against the owner or driver of the underinsured motor vehicle."

On March 2, 2018, State Farm advised Christmann that it had been "unable to collect from the responsible party" and was referring the matter to an attorney. State Farm again informed Christmann that she was entitled to pursue the responsible party for any losses sustained and not covered by her policy, but that State Farm was "unable to pursue uninsured losses on [her] behalf as [it was] not covered under [Christmann's] policy." State Farm then filed suit against Booth to recover the amount it paid to Christmann for damages resulting from the collision. It also informed Christmann of Washington's three-year statute of limitations to preserve her claims.

All communication between Christmann and State Farm then ceased until 2020. Christmann claims that after four years of struggling with pain from her injuries following the collision, she contacted State Farm to request additional UIM payments to pay for new surgical and medical care recommended by her physician. However, State Farm advised Christmann that she had received her benefits owed under the policy and that "any claim against the at fault party, Bryan Booth, can no longer be pursued due to the passing of the statute of limitations." On June 1, 2020, Christmann filed this action against State Farm to seek UIM benefits under her contract. She did not name Booth as a defendant.

State Farm filed a motion for summary judgment, arguing that Christmann had forfeited her rights to UIM coverage after failing to comply with a key provision of her contract of insurance,

---

[2] The district court found that State Farm pursued an action against Booth for $43,800, which is the amount comprising the advance of Booth's policy limits ($25,000) and the original UIM payment to which State Farm and Christmann agreed ($18,800). The additional $10,000 Christmann received from State Farm consists of medical payments received under her policy's medical payment coverage.

thereby prejudicing State Farm's subrogation rights against Booth. It relied on the "Deciding Fault and Amount Provision" of her policy, which states:

> **Deciding Fault and Amount**
>
> 1. a. The insured and we must agree to the answers to the two following questions:
>
>> (1) Is the insured legally entitled to collect compensatory damages from the owner or driver of the underinsured motor vehicle?
>>
>> (2) If the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the insured is legally entitled to collect from the owner or driver of the underinsured motor vehicle?
>
> b. If there is no agreement on the answer to either question in 1.a. above, then the insured shall:
>
>> (1) file a lawsuit, in a state or federal court that has jurisdiction, against:
>>
>>> (a) us;
>>>
>>> (b) the owner or driver of the underinsured motor vehicle unless we have consented to a settlement offer proposed by or on behalf of such owner or driver; and
>>>
>>> (c) any other party or parties who may be legally liable for the insured's damages;
>>
>> (2) consent to a jury trial if requested by us;
>>
>> (3) agree that we may contest the issues of liability and the amount of damages; and
>>
>> (4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

Christmann argued that she did not violate this provision and that State Farm failed to show actual prejudice from her failure to name Booth in the action, as required under *Bantz v. Bongard*, 124 Idaho 780, 864 P.2d 618 (1993). The district court disagreed, concluding that Christmann's conduct violated her contractual agreement under the insurance policy *and* prejudiced State Farm:

> In this case, Christmann did not pursue Booth at all. Christmann wanted to accept Booth's $25,000 in liability limits (which was advanced by State Farm) and then pursue her UIM coverage. State Farm wanted to protect its subrogation rights against Booth. While State Farm apparently pursued repayment from Booth of the $25,000 State Farm advanced to Christmann, Christmann's failure to timely sue Booth precludes State Farm from pursuing a subrogation claim against Booth of any further UIM benefits State Farm might pay to Christmann. This is prejudicial to State Farm.

4

The district court also determined that the violated policy provision—Deciding Fault and Amount—did not violate public policy because it does not "eviscerate coverage." Rather, the policy "requires more of the insured if the insured feels strongly enough that the value of her claim is worth more—it requires her to prove that value in court in litigation involving all responsible parties and State Farm." (Emphasis omitted). Because the policy was deemed valid and Christmann had purportedly prejudiced State Farm by her failure to comply with its terms, the district court granted State Farm's motion for summary judgment and dismissed Christmann's claims with prejudice.

Christmann filed a motion for reconsideration. She argued that new facts had come to light since the district court's decision—namely, that State Farm had previously filed a lawsuit against Booth in 2018 and recovered $25,000 in a settlement with Booth and USAA. The claims against Booth had then been dismissed with prejudice. Thus, Christmann argued, it was "State Farm's conduct in filing suit against Booth in 2018 and pursuing its subrogation rights against Booth for UIM Benefits which preclude[d] State Farm from pursuing any further claim and recovery against Booth." Further, Christmann asserted that because her "conduct did not prejudice State Farm's subrogation right, there is no basis to assert that Christmann has waived or forfeited her right to UIM Benefits because she did not sue Booth as the Deciding Fault and Amount provision provides."

The district court denied Christmann's motion to reconsider. It first determined that the evidence submitted by Christmann was not "newly discovered." The court declined to consider evidence that was available and known, and could have been submitted in response to the summary judgment motion. Likewise, the district court explained that it already knew of State Farm's lawsuit against Booth, having heard the details presented at the summary judgment motion hearing. The district court next determined that Christmann's prejudice argument was "stubborn and wrong" because it ignores Christmann's timing and the amounts of coverage she was pursuing:

> State Farm pursued a claim for the $43,800 it had paid Christmann. That amount comprised the tortfeasor's policy limits advance made by State Farm and the amount to which State Farm and Christmann agreed. Several years later, Christmann seeks *more than* the amounts State Farm previously paid. State Farm cannot seek subrogation against Booth for those additional amounts for at least two reasons: (1) State Farm likely released Booth in exchange for repayment; (2) the statute of limitations against Booth has expired.

5

. . . Christmann and her attorney preferred to accept Booth's policy limits payment from State Farm and then look to her underinsured motorist coverage, leaving to State Farm the decision whether to pursue from Booth reimbursement of the policy limits advance and its subrogation claim for UIM proceeds paid. It was an understandable and perhaps economically sound decision, but Christmann should bear the consequences of that decision. Instead, because Christmann (and counsel) disagreed with the Deciding Fault and Amount provision, they ignored it. Christmann now engages in painting State Farm the bad guy for following the contract. The point is, to the extent Christmann and State Farm disagreed on the value of her damages, she had the obligation to bring all parties—herself, the tortfeasor, and her underinsured motorist carrier—together in the same litigation so that liability and damages could be determined and the parties' respective legal and contractual obligations could be determined.

Thus, the district court concluded that Christmann's intentional litigation strategy had prejudiced State Farm by preventing it from pursuing Booth for any *additional* amounts State Farm may have been required to pay Christmann under her UIM policy.

The district court also determined that the Deciding Fault and Amount provision of Christmann's policy was not unconscionable. It determined that the policy "is designed to promote efficiencies and more importantly, to protect both the insured's interest in collecting UIM proceeds she claims are due and the insurer's interest in protecting its ability to pursue the tortfeasor for amounts it will be obligated to pay the insured." Thus, it was not void for violating public policy. Finally, the district court determined that the Deciding Fault and Amount Provision did not alter the statute of limitations for breach of contract actions, as Christmann had argued at her motion hearing.

Christmann appealed the district court's decisions regarding summary judgment and her denied motion for reconsideration. Christmann also filed a motion for relief from the judgment pursuant to Idaho Rule of Civil Procedure 60(b)(3). She argued that "newly discovered evidence undisputedly show[s] that State Farm's pivotal factual assertions . . . are false." This evidence consisted of a Release of All Claims (the "Release") between State Farm and Booth. Christmann argued that the Release established that State Farm had released Booth from all claims arising from the collision, which included all future subrogation rights—not just the first $25,000. Therefore, "Christmann was not required to sue Booth under the Insurance Policy's Deciding Fault and Amount" provision and "State Farm should have conceded that, per the operation of the Release, it was forevermore legally barred from bringing any claims relating to this accident against Mr.

Booth." State Farm argued that Christmann was once again presenting untimely evidence and, essentially, another motion to reconsider, though disguised as a Rule 60(b) motion. It filed a contemporaneous motion to strike Christmann's "newly 'presented' submissions."

The district court first granted State Farm's motion to strike the exhibits submitted with Christmann's Rule 60(b)(3) motion. It then denied Christmann's Rule 60(b)(3) motion for failure to demonstrate fraud, misrepresentation, or misconduct by State Farm. While the court recognized the Release was new evidence, it also determined "that [the] release could have been obtained by [Christmann] at a much earlier time and that [the late submission was] in large part too little too late."

Christmann filed an amended notice of appeal to challenge each of the district court's decisions, including the order granting summary judgment to State Farm, the denial of Christmann's motion to reconsider, the order granting State Farm's motion to strike, and the denial of Christmann's Rule 60(b)(3) motion.

## II. STANDARDS OF REVIEW

When this Court reviews a trial court's ruling on a motion for summary judgment, it applies the same standard used by the trial court originally ruling on the motion. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017). Pursuant to the Idaho Rules of Civil Procedure, a court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "In making this determination, all allegations of fact in the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion." *City of Kellogg v. Mission Mountain Ints., Ltd., Co.*, 135 Idaho 239, 243, 16 P.3d 915, 919 (2000). "If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428, 398 P.3d at 161.

In reviewing motions for reconsideration, this Court likewise applies the same standard of review used by the lower court in deciding the motion for reconsideration. Where the lower court grants summary judgment and then denies a motion for reconsideration, this Court "must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Shea v. Kevic Corp.*, 156 Idaho 540, 545, 328 P.3d 520, 525 (2014) (quoting *Bremer, LLC v. E. Greenacres Irrigation Dist.*, 155 Idaho 736, 744, 316 P.3d 652, 660 (2013) (additional

citations omitted)). Thus, "the Court reviews the district court's denial of a motion for reconsideration de novo." *Id.* (quoting *Bremer*, 155 Idaho at 744, 316 P.3d at 660).

Additional standards of review will be addressed below.

## III. ANALYSIS

The primary issue on appeal concerns prejudice. Specifically, we must determine whether Christmann's noncompliance with the Deciding Fault and Amount provision of her insurance policy somehow prejudiced State Farm's subrogation rights against Booth and forfeited her UIM coverage. To answer this question, we must first consider whether State Farm had already extinguished its subrogation rights, thereby making prejudice impossible. This determination is foundational and dispositive of the parties' arguments on appeal as prejudice formed the basis of the district court's decision to award summary judgment to State Farm and to deny Christmann's motion for reconsideration.

### A. Christmann's conduct did not prejudice State Farm's subrogation rights because State Farm had already extinguished these rights by its own actions.

Christmann first argues that State Farm's subrogation rights could not have been prejudiced because State Farm's own "conduct precluded it from seeking further subrogation from Booth." She supports this argument in several ways, including her contention that any subrogation claim pursued by State Farm would have been barred by the Release and the doctrines of res judicata and estoppel brought about by State Farm's actions. She also argues that she established clear and convincing grounds for relief because during the summary judgment stage State Farm misrepresented material facts of the case and committed fraud on the district court. State Farm responds that due to Christmann's failure to timely present evidence of its Washington lawsuit against Booth, the lower court did not consider the doctrines of res judicata and estoppel; therefore, "this Court may not now consider Appellant's arguments" regarding res judicata and estoppel.

*1. The district court should have considered the Release.*

State Farm contends that Christmann improperly submitted additional evidence after summary judgment with her motions for reconsideration and Rule 60(b) relief. In particular, it argues that Christmann's effort to introduce the Release was both untimely and irrelevant; thus, the district court refused to consider it.

We review challenges to a district court's evidentiary rulings for an abuse of discretion. *Phillips v. E. Idaho Health Servs., Inc.*, 166 Idaho 731, 741, 463 P.3d 365, 375 (2020). We also

8

review a trial court's order regarding a motion for Rule 60(b) relief under our abuse of discretion standard. *VFP VC v. Dakota Co.*, 142 Idaho 675, 678, 132 P.3d 432, 435 (2006). When we conduct appellate review under the abuse of discretion standard, this Court determines "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Phillips*, 166 Idaho at 741, 463 P.3d at 375 (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

Christmann submitted the Release with her Rule 60(b)(3) motion for relief as evidence that State Farm had previously waived its subrogation rights. The district court found this to be "too little too late" because it was filed beyond summary judgment and discovery deadlines, and was essentially an attempt by Christmann to submit previously available evidence beyond a reasonable time frame.

A Rule 60(b) motion is not a mechanism for bypassing procedural deadlines and we do not view it as a substitute for a lack of diligence during the discovery process. We have addressed such issues in prior cases and continue to stand by these decisions. *See, e.g.*, *Ciccarello v. Davies*, 166 Idaho 153, 162, 456 P.3d 519, 528 (2019). This case, however, presents an unusual situation. State Farm admittedly failed to provide Christmann with a complete case file and disclose the existence of admissible, highly relevant evidence that was determinative of the dispositive issue—whether State Farm had been prejudiced. The Release should have been disclosed to Christmann during the initial phases of discovery. If it had, there is little doubt it would have been available to the district court when it determined whether State Farm had any subrogation rights remaining. In sum, if it had been timely disclosed it would have been timely submitted, and it would have been clear that State Farm had released its rights.

Regardless of the wording of Christmann's discovery requests, the Release was highly material and State Farm should have disclosed it from the beginning. Even if for some reason it was not initially present in State Farm's case file, counsel for State Farm knew of its prior litigation against Booth and should have known that the terms of the Release would be critical to prove (or disprove) its claim of prejudice on the issue of subrogation. Yet, when it was belatedly disclosed

by State Farm and then presented to the district court by Christmann, the Release was stricken by the district court even though its authenticity was undisputed.

We conclude that the Release was a document of such import that State Farm should have supplied it to Christmann and the district court from the start. Furthermore, we further conclude that in light of the record, the decision to strike it was reached without "the exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. State Farm should not have been permitted to benefit from its late disclosure so that it could successfully, and inappropriately, argue that there was prejudice. Accordingly, we hold that given the importance of the Release to this case, it was error for the court to not consider it.

   2. *The district court erred in awarding summary judgment to State Farm on the basis of prejudice.*

This is our first opportunity to address how an *insurer* may relinquish its subrogation rights by independently settling with the tortfeasor. "Subrogation is a tool of equity that allows an insurer to sue any party whom the insured could have sued." Mary G. Leary, *Uninsured and Underinsured Motorist Claims*, 81 Am. Jur. Trials 425, § 16 (originally published in 2001). "An insurer's claim by subrogation is derivative from that of the insured, and it is subject to the same statute of limitation as though the action were sued upon by the insured." *May Trucking Co. v. Int'l Harvester Co.*, 97 Idaho 319, 321, 543 P.2d 1159, 1161 (1975). Insurance cases analyzing the waiver of subrogation rights typically focus on the conduct of the *insured* in settlements, rather than the insurer—such as where UIM claimants enter unauthorized settlement with the tortfeasor.

"When an underinsured tortfeasor is involved, subrogation is complicated by the presence of the underinsured tortfeasor's liability carrier." *Uninsured and Underinsured Motorist Claims*, *supra*, § 16. This is true because the two insurance carriers will inevitably have conflicting obligations: a tortfeasor's liability carrier generally seeks to protect its insured by paying policy limits and obtaining a release protecting the tortfeasor from additional exposure, while the underinsurance carrier has an obligation to compensate its insured and holds a statutory right of subrogation against the negligent motorist. *Id.* Such conflicting interests often lead to an impasse. *Id.* Nevertheless, there are a variety of circumstances in which an insurance carrier "may itself enter into a settlement and release with a wrongdoer against which it later seeks to recover by way of subrogation." Steven Plitt, et al., 16 *Couch on Insurance* § 224:141.

A UIM carrier may waive its right to subrogation either by contract or conduct, with the waiver either express or implied. *Id.* at § 224:139. These rights may also be lost through estoppel. *Id.* Where there is a release of a tortfeasor, its scope "may impair or preserve the insurer's subrogation rights." *Id.* at § 225:46. Ultimately, whether an insurer has relinquished its subrogation rights through settlement with the tortfeasor is generally treated as a fact-intensive inquiry for the trial court.

> In determining whether an automobile insurer's settlement of a counterclaim with a third-party tortfeasor constituted accord and satisfaction of all claims, which would stop the insurer from asserting a subsequent claim against the third party for subrogation, the fact finder should consider, among other things, whether the insurer expressly reserved its right to assert its own claims and whether subsequent claims arose of which the insurer was not aware when it settled.

*Id.* at § 224:141 (citing *Vidal v. Am. Gen. Cos.*, 785 P.2d 231 (N.M. 1990)).

This application of the law stems from the New Mexico Supreme Court's holding in *Vidal v. American General Companies*, 785 P.2d 231 (N.M. 1990). In *Vidal*, the plaintiff was injured by an underinsured motorist. *Id.* at 233. Vidal notified his insurer, American General, of the accident and subsequently filed a UIM claim under his policy. Vidal then sued the tortfeasor. The tortfeasor counterclaimed, and the lawsuit eventually proceeded to settlement. *Id.* Vidal agreed to settle for the limit of the tortfeasor's insurance policy. Both Vidal and the tortfeasor then executed releases of their claims and jointly moved to dismiss their lawsuits with prejudice. American General did not authorize this settlement—it "apparently was not aware that Vidal had settled his claim"—yet American General proceeded to settle the tortfeasor's counterclaim directly. *Id.*

When Vidal pursued his UIM coverage after the settlement, American General denied the claim—arguing that its subrogation rights were destroyed by Vidal's settlement without its authorization, which was in violation of the insurance policy. *Id.* Vidal sued his insurer, American General. He argued that American General "abandoned its subrogation rights of its own accord" by settling with the tortfeasor, making Vidal's own alleged breach of the contractual requirements in the policy "irrelevant and . . . a nullity under the circumstances." *Id.* The Supreme Court of New Mexico agreed, concluding "that judgment for the insurer is conditional upon its showing that its own settlement with the tort-feasor did not extinguish its subrogation rights," and remanded the issue to the trial court. *Id.* Inasmuch as the consent clause acted to protect American General's subrogation rights, American General could not rely on the plaintiff's breach to deny UIM

coverage if it had already relinquished its right to subrogation. *Id.* at 235. American General, as the insurer, also bore the burden of proving that the settlement did not constitute an accord and satisfaction. *Id.*

We find *Vidal*'s analysis in line with our holding in *Bantz v. Bongard*, 124 Idaho 780, 864 P.2d 618 (1993), where we concluded that the insurer bears the burden of proving actual prejudice. While *Bantz* differs in several aspects from this appeal, we agree with Christmann that it supports her argument that State Farm failed to meet its burden of proof for summary judgment. In *Bantz*, a plaintiff was injured in a multiple-vehicle accident involving an uninsured tortfeasor. The plaintiff settled with the tortfeasor without authorization or consent from her insurance company. *Id.* at 782, 864 P.2d at 620. We examined whether her failure to give notice of the settlement to the insurance company, as required by the policy, waived her right to uninsured motorist coverage. *Id.* Our analysis looked to similar cases in other jurisdictions and concluded that noncompliance with the consent-to-settle provision of the insurance policy would bar any recovery *if* the insurer could show, on remand, that it was prejudiced by the unauthorized settlements. *Id.* We explained:

> a consent-to-settle clause should not be enforced so as to work a forfeiture of uninsured motorist coverage unless the insurer can show *actual prejudice* from the unconsented-to settlement. To hold otherwise would produce an undeserved windfall to the insurance company while depriving an otherwise deserving insured person of recovery.

*Id.* at 786, 864 P.2d at 624 (emphasis added). We then remanded the case for a determination whether the insurance company could demonstrate that actual prejudice had resulted from the unauthorized settlement. *Id.*

Together, *Vidal* and *Bantz* establish that an insurer can relinquish its subrogation rights and waive a prejudice defense by its own conduct. This issue generally requires that the trial court conduct a fact-intensive inquiry. For example, in *Vidal*, the court required the insurer to provide evidence that its conduct had not waived or relinquished its subrogation rights, and only then could it assert prejudice as a defense against the insured's claims. 785 P.2d at 235. *Bantz* likewise held that the insurance company bears the burden of proving actual prejudice from an insured's unauthorized settlements and we remanded the case for a determination on prejudice. *Id.* at 786, 864 P.2d at 624.

There is no doubt from the record that State Farm waived its subrogation claims against Booth. The record is rife with evidence that prejudice was not only incorrectly assumed from the

start, but that it was altogether absent from this case. At the time of the motion for summary judgment, the district court was aware that State Farm had filed a lawsuit against Booth in Washington in 2018. Christmann submitted the Washington case docket for *State Farm v. Bryan Booth* as an evidentiary exhibit attached to her summary judgment briefing. At the summary judgment hearing, the district court was informed by *both parties* that State Farm recovered the $25,000 in liability limits it originally advanced to Christmann through settlement with Booth's insurer. The original suit sought even more—State Farm first filed the action against Booth to recover $43,800, which means State Farm pursued the full amount of UIM coverage it had paid Christmann. The record at the summary judgment stage likewise evidenced that all of State Farm's claims against Booth had been dismissed *with prejudice*.

In short, the record before the district court at summary judgment establishes that State Farm obtained a compromise and settlement of *all its claims* against Booth. This much is clear even without consideration of the Release. No additional subrogation rights could have been pursued even if Christmann had complied with her policy by naming Booth in her complaint because no subrogation rights remained to be protected. Estoppel would bar any subsequent action between State Farm and Booth resulting from the 2016 accident. *See Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007) ("Claim preclusion bars a subsequent action between the same parties upon the same claim or upon claims 'relating to the same cause of action . . . which might have been made.'"). The Release, which states that State Farm released Booth from "all claims" "now accrued or hereafter to accrue," reinforces this conclusion.

Prejudice cannot be shown if State Farm pursued and then waived its own right to subrogation. Even the district court recognized that "State Farm cannot seek subrogation against Booth" because "*State Farm likely released Booth in exchange for repayment.*" (Emphasis added). Notwithstanding this correct conclusion, the district court ultimately erred by accepting State Farm's incongruous argument of prejudice, that Christmann's noncompliance with her policy made it impossible for State Farm to pursue its subrogation rights against Booth. This incongruity has led to a string of errors inasmuch as the insurer's subrogation rights had already been extinguished.

Additionally, there was no other grounds to find actual prejudice by the district court. While the district court noted Booth's potential insolvency and State Farm's likely inability to

13

recover, these were both just assumptions. The record contains no evidence to support such findings. We are mindful here of our de novo standard of review following summary judgment. "The absence of findings and conclusions may be disregarded by the appellate court only where the record is clear, and yields an obvious answer to the relevant question." *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). "Absent such circumstances, the failure of the trial court to make findings of fact and conclusions of law concerning the material issues arising from the pleadings, upon which proof is offered, will necessitate a reversal of the judgment and a remand for additional findings and conclusions, unless such findings and conclusions would not affect the judgment entered." *Id.* Thus, we conclude that the district court erred by failing to make findings, grounded in the record, concerning the tortfeasor's insolvency and State Farm's ability to recover.

Drawing all reasonable inferences in the light most favorable to Christmann, we conclude that State Farm was not entitled to summary judgment as a matter of law. Under *Bantz*, State Farm bore the burden of proving actual prejudice. It failed to do so. Instead, the record shows that it knowingly waived its subrogation rights by signing the Release and stipulating to dismiss the Washington state action with prejudice. State Farm has continuously argued—even on appeal— that it suffered prejudice at Christmann's hands; however, this defense is as misleading as it is unsupportable. Accordingly, we reverse the award of summary judgment to State Farm because the district court's denial of Christmann's motions for reconsideration and Rule 60(b)(3) relief were founded on an incorrect assumption of prejudice. Inasmuch as our holding is dispositive to the remaining issues on appeal, we need not address Christmann's arguments regarding public policy and the terms of her policy.

**B. Christmann is entitled to attorney fees on appeal.**

Both parties seek attorney fees on appeal. State Farm asks this Court for an award of attorney fees under Idaho Code section 12-121, but we have previously held that section 12-121 to be inapplicable in cases like the one at bar. *Greenwald v. W. Sur. Co.*, 164 Idaho 929, 944, 436 P.3d 1278, 1293 (2019) ("Section 41-1839 provides that it and 'section 12-123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions or arbitrations between insureds and insurers involving disputes arising under policies of insurance.' "). *See also Trinity Universal Ins. Co. v. Kirsling*, 139 Idaho 89, 95, 73 P.3d 102, 108 (2003). In an action

between an insured and an insurer, a trial court can award attorney fees "when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 41-1839(4).

Christmann has prevailed in this appeal and we conclude that State Farm's defense was frivolous, unreasonable, and without foundation. Indeed, we cannot overstate how unacceptable State Farm's arguments and conduct have been in this case. State Farm continuously asserted that Christmann's conduct prejudiced its subrogation rights despite incontrovertible evidence—in its possession—that State Farm had already waived those rights through its own conduct when it released Booth from all claims. This argument was neither legally nor factually supportable, and State Farm knew as much when it made the argument. Despite knowing of its final settlement with Booth, despite having fully recovered the $25,000 advanced to Christmann, despite releasing all present and future claims against Booth, and despite dismissing its lawsuit against Booth with prejudice, State Farm has stood by its unfounded argument that its subrogation rights have been "permanently taken . . . due to [Christmann's] failure to simply comply with the provisions of the policy." This is not true. State Farm permanently relinquished its opportunity for subrogation by its own conduct when it voluntarily consented to a settlement with Booth for the policy limits. State Farm cannot in good faith claim otherwise. Accordingly, we award attorney fees to Christmann. As the prevailing party on appeal, she is also entitled to costs pursuant to Idaho Appellate Rule 40(a) as a matter of course.

## IV. CONCLUSION

We reverse the district court's award of summary judgment to State Farm, as well as its orders denying Christmann's motions for reconsideration and Rule 60(b)(3) relief. Because the court erred in finding prejudice even though State Farm voluntarily waived its subrogation right, we conclude that summary judgment was unfounded. Accordingly, we remand this case for further proceedings consistent with this opinion. Attorney fees and costs on appeal are awarded to Christmann as the prevailing party.

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**